FILED
COURT OF APPEALS
DIVISION II

2013 OCT 29 AM 9: 48

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43362-1-II |
| Respondent, | |
| v. | |
| SHERRY M. HAVENS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Sherry M. Havens appeals her jury trial conviction and sentence for second degree burglary.[1] The burglary charge was based on Havens's attempt to shoplift at a Wal-Mart store after having previously been trespassed from the store. She argues that (1) the jury instructions omitted an essential element by failing to require the State to prove that she knew she was not allowed on the premises when she entered the Wal-Mart, (2) her offender score erroneously included a washed-out class C felony conviction, and (3) her trial counsel provided ineffective assistance of counsel in failing to conduct an adequate investigation and in failing to request jury instructions related to a potential defense. Because (1) Havens invited any potential instructional error, (2) the record shows that the five-year wash-out period was interrupted by at least one misdemeanor conviction, and (3) Havens fails to show that further investigation would have provided any evidence that would have helped her defense or that her

---

[1] RCW 9A.52.030.

counsel's choice to not pursue issues related to her potential defense was not a reasonable tactical decision, we affirm.

## FACTS

On August 7, 2009, Havens was served with a trespass notice prohibiting her from entering the Wal-Mart in Shelton. Despite this, she returned to the Shelton Wal-Mart on August 18, 2011. Observing suspicious behavior, an asset protection associate followed Havens throughout the store and then stopped her as she approached the exit doors with her cart containing several items for which she had not paid. Because Wal-Mart had previously trespassed Havens, the State charged her with second degree burglary.

### I. STIPULATION

Shortly before her February 2012 trial, the parties discussed Havens's agreement to stipulate to the existence of the trespass notice. Havens's counsel originally agreed that (1) Havens would stipulate that Wal-Mart had notified her that she had been trespassed from the Shelton Wal-Mart property, (2) she had received this notice, (3) "therefore it was unlawful for her to enter," and (4) "she was aware of the order." Verbatim Report of Proceedings (VRP) at 2-3.

A short time later, the following colloquy occurred:

> [STATE]: . . . I was speaking with [Havens's counsel] regarding the stipulation, and apparently there is a—going to be a defense, which I don't recall—I don't have the Consolidated Omnibus Order in front of me.
>
> [DEFENSE COUNSEL]: No, I—there's no defense. I'm just saying as to that stipulation—
>
> . . . .
>
> —the second—the last line of the stipulation, [that "she was aware of the order"] I don't believe Ms. Havens can agree to. *We would stipulate that* she has been served with a trespass notice and that she signed for it, and therefore, *her*

*entry into Wal-Mart was unlawful.* That, we will stipulate to, but Mr.—the last sentence of—I don't—you can read it to the Court. I don't think Ms. Havens is agreeing to that last sentence.

[STATE]: Well what my point is, is that apparently there was [an] *allegation that Ms. Havens has suffered some kind of head injury where she don't—she doesn't remember the fact that she has been trespassed from Wal-Mart.* And that sounds suspiciously close to the State as diminished capacity, but—

[DEFENSE COUNSEL]: Well, *we're stipulating that she was there unlawfully.* I mean, that's—it's correct that Ms. Havens—

THE COURT: I'm going to stop you right now. If you agree on a stipulation and the Court approves it, fine, but I'm not going to hash it out at this point, with interjecting the Court into something that the two sides need to be able to agree on first.

[STATE]: This is above and beyond the stipulation, Your Honor. I mean I'll clearly take out the last sentence, but what I'm concerned about is if Ms. Havens testifies. If she testifies that she—regardless of the stipulation, how do we prove that she'd been trespassed but she didn't remember being trespassed because [of] some kind of head injury. And that's a defense, Your Honor, that the State believes is basically a diminished capacity defense. And there is absolutely no medical evidence as far as the State knows, to show this, and the State believes that the diminished capacity defense is you have to have some kind of medical testimony. So, the State's—what the State's asking the Court is to prevent this from coming out. This is—you know, I appreciate [defense counsel], you know, his candor, his being an officer of the court and informing me.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Your Honor, I have no intention of going into Ms. Havens'[s] head injury or the fact that she doesn't remember being trespassed. We're stipulating—*we are stipulating that she was trespassed and that therefore her entry into Wal-Mart was unlawful.*

[STATE]: Okay.

[DEFENSE COUNSEL]: Our defense is not diminished capacity. *Our defense is that she did not commit the crime of shoplifting.* She didn't do it. That's our defense.

. . . .

THE COURT: Alright. The Court has also looked at the Consolidated Omnibus Order and the defenses that were checked, actually just one, the general denial.

VRP at 11-13 (emphasis added).

Ultimately, Havens agreed to and the jury was provided with the following stipulation:

> The parties agree and stipulate as follows: The defendant, Sherry Havens, has been served with a trespass notice on August 7, 2009[,] from the Shelton Walmart [sic], prohibiting her from lawfully entering the premises.

Clerk's Papers (CP) at 21.

## II. TESTIMONY

At trial, Wal-Mart asset protection associates testified that they had observed Havens wander around the store for some time, place unpaid for items in a Wal-Mart bag, walk past the cash registers, and prepare to leave the store with the cart containing the unpaid for items. None of the items in the bag or the cart had security tags that would have set off the security system if Havens had passed through the exit doors. They stopped her as she approached the exit doors with the cart and the doors were opening.

Havens testified that she entered the store to exchange some underwear she had previously purchased and to shop for some items while her son was at a nearby football practice and that she did not attempt to leave the store with any unpaid for merchandise. Instead, she asserted that she had parked her shopping cart near the exit doors and then briefly stepped outside, without the cart, when she thought she saw her son outside the store. She also testified that the asset protection associate stopped her after she came back into the store, not as she was trying to leave the store.

Defense counsel then asked Havens about her prior 2003 and 2004 third degree theft convictions and "some kind of theft charge in June" 2011. VRP at 55. Havens acknowledged these convictions. But when the State attempted to cross-examine her about a June 2003 conviction, Havens responded:

I don't recall, and the—I don't recall a day or remember any of that. *I had [a] head trauma* which the other lady at Wal-Mart brought my file out and showed me, asked me if that was my signature, which recalls that—and it was my signature, which she recalled me that I was kicked out of Wal-Mart, *but at August* [sic] *I didn't recall—remember that I was kicked out of Wal-Mart.*

VRP at 56 (emphasis added). Havens also testified that she did not "recall" the 2003 or 2004 thefts, stating that she didn't "have very much memory . . . from April, 2011 and back." VRP at 58.

### III. JUROR NOTE

After Havens's testimony, the trial court advised the parties that a juror sent out a note explaining that he was a retired registered nurse and had had "personal experience" with head injuries. VRP at 76. The juror's note stated, "I realize this has not been introduced, parentheses, head injuries, parenthesis, as evidence and your instructions may cover this. I wanted you to be aware." VRP at 76.

Defense counsel responded:

I think that's fine. I don't think it requires any action. We're aware of it. [The State] and I knew that we—all along that Ms. Havens suffered a serious head injury in April of last year. *We chose not to put on a diminished capacity defense because our defense is she didn't do it, not she did it and for some reason didn't know what she was doing. She didn't do it, is our defense.* So, it's not really germane. It came up a little bit in the cross[-]examination scenario where [the State] was trying to pin her down and she said she didn't remember, she had had a car accident. But, I don't think it calls for any action on our part.

VRP at 76-77 (emphasis added). The parties ultimately agreed that the court did not need to take any action addressing the juror's note.

## IV. JURY INSTRUCTIONS

Defense counsel did not offer any instructions or object to any of the State's proposed instructions. The jury instructions (1) instructed the jury on the definition of second degree burglary, including that the defendant had to enter or remain unlawfully with intent to commit a crime,[2] (2) defined the term unlawfully,[3] and (3) included a to convict instruction that reiterated the second degree burglary definitional instruction. None of the trial court's instructions told the jury that Havens had to be aware she was entering the Wal-Mart unlawfully.

## V. CLOSING ARGUMENT AND VERDICT

In its closing argument, the State argued:

> Let's start off with [element] number (1). On or about August 18, 2011, the defendant entered or remained unlawfully in a building. There was a stipulation that was read to you by the judge, entered into by all the parties—by the parties, the State and by the defense, and that stipulation said that Ms. Havens had been trespassed from Wal-Mart in August of 2009. August 9, 2009. So, by her entering, her entering was unlawful in 2011. She had been trespassed. She was told by Wal-Mart you can no longer come back here. *It was a legal trespass. By coming back, she entered unlawfully. This element is not in dispute. That has been proved beyond a reasonable doubt.*

---

[2] Instruction 6 stated:
> A person commits the crime of burglary in the second degree when he or she enters or remains *unlawfully* in a building with intent to commit a crime against a person or property therein.

CP at 30 (emphasis added).

[3] Instruction 9 stated:
> A person enters or remains unlawfully in or upon premises when he or she is not licensed, invited, or otherwise privileged to so enter or remain.

CP at 33.

VRP at 108-09 (emphasis added). The State further argued that the "crux of this case" was whether Havens entered the store with intent to commit a theft or formed that intent while inside. VRP at 109. Havens did not object to the State's closing argument.

Similarly, Havens's closing argument focused on whether the State had proven that she had entered the store with intent to shoplift. Havens never mentioned the head injury or disputed that she had unlawfully entered the store.

The jury found Havens guilty of second degree burglary. The case proceeded to sentencing.

## VI. SENTENCING

At the sentencing hearing, the State asserted that Havens had the following prior felony convictions: (1) a second degree burglary conviction for a November 20, 2004 burglary, which was sentenced on March 14, 2005; and (2) two unlawful possession of a controlled substance convictions for possession on May 23, 2005, which were sentenced July 18, 2005. Conceding that the two drug offenses were same criminal conduct, the State asked the trial court to sentence Havens with an offender score of 3 (one point for the two drug convictions and two points for the previous burglary conviction).

The State further noted that Havens also had "a fairly extensive history of misdemeanor convictions going back to 2003," which included additional shoplifting and/or third degree theft convictions and several driving related offenses. VRP at 126. The trial court record contains a

JIS[4] report detailing Havens's criminal history that includes an August 2009 conviction for first degree criminal trespass. Defense counsel responded that Havens did not "contest the accuracy of the State's recitation of the history," and requested a mid-range sentence. VRP at 128. The State requested a sentence at the top end of the standard sentencing range.

The trial court sentenced Havens with an offender score of three. Noting that Havens had several shoplifting or third degree theft convictions in addition to her felony criminal history, it sentenced her to a high-end standard range sentence. Havens appeals her conviction and sentence.

## ANALYSIS

### I. JURY INSTRUCTIONS: INVITED ERROR

Havens first argues that the trial court failed to instruct the jury that it had to find she knew that she had been trespassed from Wal-Mart when she entered the premises, that the court's failure to do so relieved the State of its burden to prove every element of the offense, and that the total omission of the element requires automatic reversal. Assuming, but not deciding, that Havens's knowledge of the trespass notice at the time she entered the Wal-Mart was an element, we hold that Havens invited this instructional error and reject this argument.

"Under the doctrine of invited error, counsel cannot set up an error at trial and then complain of it on appeal. [We] will deem an error waived if the party asserting such error

---

[4] A JIS report is generated from the Judicial Information System database, which "'is the primary information system for courts in Washington' and 'serves as a statewide clearinghouse for criminal history information.'" *State v. Hunley*, 175 Wn.2d 901, 911 n.4, 287 P.3d 584 (2012) (quoting *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 569-70, 243 P.3d 540 (2010)). The JIS report here was attached to Havens's August 19, 2011 indigency screening form.

materially contributed thereto." *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995) (citing *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds in State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995)). "The invited error doctrine prevents parties from benefiting from any error they caused at trial regardless of whether it was done intentionally or unintentionally. The doctrine has been applied to errors of constitutional magnitude, including where an offense element was omitted from the 'to convict instruction.'" *State v. Recuenco*, 154 Wn.2d 156, 163, 110 P.3d 188 (2005) (citing *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002)), *rev'd on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). The invited error doctrine is a "'strict rule' to be applied in every situation where the defendant's actions at least in part cause[d] the error." *State v. Summers*, 107 Wn. App. 373, 381-82, 28 P.3d 780, 43 P.3d 526 (2001) (quoting *State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999)).

To be guilty of second degree burglary, RCW 9A.52.030(1) requires only that the person (1) enter or remain unlawfully in a building other than a vehicle or a dwelling, (2) with intent to commit a crime against a person or property therein. It does not contain an express requirement that the defendant know the entry was unlawful. Here, it was undisputed and Havens stipulated that she entered the Wal-Mart unlawfully. Havens's defense focused solely on the second element, intent to commit a crime inside. In support of her defense, Havens testified that she neither shoplifted nor intended to shoplift inside the Wal-Mart; instead, she had merely parked her cart inside the store while she went outside to see whether her son had arrived. The store's security guards testified to the contrary. The jury decided which witnesses they found credible and found Havens guilty based on the security guard's testimony.

Havens did not offer any jury instructions, requiring the jury to find a third non-statutory second degree burglary element that she knew she had been forbidden to enter the store; nor did she object to the trial court's failure to include such an element in the to convict instruction. Thus, she materially contributed to any potential error by (1) failing to afford the trial court an opportunity to cure any error with an additional instruction, (2) repeatedly assuring the State and the trial court that she was *not* disputing that she entered Wal-Mart unlawfully, and (3) not objecting when the State argued in closing that her unlawful entry was not at issue. Because Havens invited this error, if any, she has waived this argument, and we do not further address it.[5]

## II. OFFENDER SCORE

Havens next argues that the trial court should not have included the 2005 class C felony drug conviction in her offender score because the State failed to allege or prove the facts or convictions necessary to establish that 2005 felony conviction had not washed out of her offender score under RCW 9.94A.525(2)(c).[6] We disagree.

---

[5] At our request, the parties filed supplemental briefing addressing whether invited error applied here. Havens responds that the error here was "arguably invited, given counsel's repeated assurances that Ms. Haven's [sic] knowledge of the trespass order would not be at issue at trial." Appellant's Suppl. Br. at 3. But she contends that if the error was invited, her trial counsel was ineffective in failing to fully investigate or pursue "a mental health defense relating to the trespass notice." Appellant's Suppl. Br. at 4. We address the ineffective assistance of counsel claim below.

[6] RCW 9.94A.525(2)(c) provides:
> Except as provided in (e) of this subsection, class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

First, Havens affirmatively acknowledged at the sentencing hearing that the State's criminal history and offender score calculations were correct, and this affirmative acknowledgement satisfies the Sentencing Reform Act requirements; no further proof of these convictions is required. *State v. Bergstrom*, 162 Wn.2d 87, 94, 169 P.3d 816 (2007)[7]; *see also State v. Ross*, 152 Wn.2d 220, 233, 95 P.3d 1225 (2004) (citing *State v. Ford*, 137 Wn.2d 472, 482-83, 973 P.2d 452 (1999)). Second, although Havens is correct that she cannot agree to a sentence in excess of what is statutorily authorized or waive a challenge to a miscalculated offender score if that error is an error of law, she fails to establish that her sentence is in excess of what is statutorily authorized or that her offender score is incorrect. The JIS report[8] in the court record clearly establishes that Havens had at least one misdemeanor offense (an August 2009 first degree criminal trespass conviction) that interrupted the five-year period after her conviction on the class C offense. Additionally, the State discussed Havens's prior misdemeanor history at the sentencing hearing and the trial court referred to several specific misdemeanor

---

[7] The *Bergstrom* court stated:
> [I]f the State alleges the existence of prior convictions and the defense not only fails to specifically object but agrees with the State's depiction of the defendant's criminal history, then the defendant waives the right to challenge the criminal history after sentence is imposed. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). . . . Sentencing courts can rely on defense acknowledgment of prior convictions without further proof. Former RCW 9.94A.530(2) (2002); [*In re Pers. Restraint of*] *Cadwallader*, 155 Wn.2d [867,] 873, 123 P.3d 456 [(2005)].

162 Wn.2d at 94.

[8] Although a JIS report is not the "best evidence" of a prior conviction, our Supreme Court has held that such documentation is sufficient when the defendant does not object to it. *See Hunley*, 175 Wn.2d at 910-11.

offenses at sentencing, so the record demonstrates that the court considered the JIS.[9]

Accordingly, Havens's sentencing argument fails.[10]

## III. No Ineffective Assistance of Counsel

Havens next argues that her trial counsel provided ineffective assistance of counsel in failing to investigate and in failing to offer certain instructions. We disagree.

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective representation. *State v. Hendrickson*, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To demonstrate ineffective assistance of counsel, Havens must show (1) her counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced her defense. *State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)), *cert. denied*, 479 U.S. 922 (1986). The appellant bears the burden of proving both parts, and failure to establish either part defeats the ineffective assistance of counsel claim. *Jeffries*,

---

[9] *Cadwallader*, 155 Wn.2d at 874 (defendants cannot agree to sentences that exceed the court's statutory authority); *Goodwin*, 146 Wn.2d at 874 (defendant cannot waive a sentencing error when the error is a legal error resulting in an excessive sentence).

[10] Furthermore, even assuming the State had the burden to prove that the class C felony did not wash out, Havens has not shown that the State would be unable to present additional evidence were we to remand for resentencing. Havens did not object to the State's characterization of her criminal history or offender score but, even if remand was required, an evidentiary hearing on remand for resentencing would be appropriate because she failed to specifically object to the State's evidence on the existence of a prior conviction. *See Bergstrom*, 162 Wn.2d at 93; *Cadwallader*, 155 Wn.2d at 878. Because the record here contains evidence establishing that the five-year wash-out period was interrupted by several misdemeanor convictions, we can determine on the record before us that the class C felony did not wash out of Havens's offender score; thus remand for resentencing would be a waste of judicial resources.

105 Wn.2d at 418 (citing *Strickland*, 466 U.S. at 687). Counsel's legitimate tactical decisions do not constitute ineffective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

## A. Investigation

Havens first contends that her trial counsel provided ineffective assistance of counsel in failing to conduct an adequate investigation into her (Havens's) alleged head injury. She asserts that an investigation could have resulted in a potential "defense" or supported a "mitigating factor that could have been presented during plea negotiations or at sentencing." Br. of Appellant at 16.

Defense counsel has a duty to conduct a reasonable investigation. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 252, 172 P.3d 335 (2007) (citing *Strickland*, 466 U.S. at 691). A defendant seeking relief under a failure to investigate theory "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). But Havens has not established that further investigation would have likely uncovered additional evidence related to her alleged head injury that would have assisted in her case. Havens's bare assertion that additional investigation would have uncovered useful evidence that could have been helpful is speculative and is insufficient to establish that counsel was deficient for failing to investigate.[11]

---

[11] If additional evidence exists supporting this claim, then Havens may produce that evidence in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)

B. Instructions

Finally, Havens argues that her trial counsel was ineffective for failing to "seek instructions outlining [her] defense." Br. of Appellant at 17. It is not clear from Havens's briefing whether she is claiming that her counsel should have offered instructions on a diminished capacity defense or whether she is asserting that her counsel should have offered instructions stating that Havens had to know that she was entering the Wal-Mart unlawfully. In either case, this argument fails.

First, to the extent she is arguing that counsel should have requested a diminished capacity defense instruction, Havens must show that she would have been entitled to such an instruction if counsel had offered it. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). "Diminished capacity is a mental disorder not amounting to insanity that impairs the defendant's ability to form the culpable mental state to commit the crime." *State v. Harris*, 122 Wn. App. 498, 506, 94 P.3d 379 (2004) (citing *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)). A defendant is entitled to a diminished capacity instruction when she produces expert testimony establishing that she suffered from a mental disorder and that the evidence "logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged." *State v. Griffin*, 100 Wn.2d 417, 419, 670 P.2d 265 (1983); *see also Cienfuegos*, 144 Wn.2d at 227; *State v. Ellis*, 136 Wn.2d 498, 521-22, 963 P.2d 843 (1998).

---

("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

The evidence in this record does not support a diminished capacity instruction. Although Havens testified that she had memory problems following an April 2011 accident, there was no expert testimony establishing that she suffered from a mental disorder that was related to her ability to form the necessary intent for committing the charged crime. Thus, on this record, Havens has not established that she would have been entitled to a diminished capacity instruction if one had been offered.[12]

Second, to the extent she is arguing that her counsel should have offered jury instructions stating that Havens had to know that her entry into Wal-Mart was unlawful, assuming but not deciding that this is a correct statement of the law, Havens fails to show the absence of legitimate strategic or tactical reasons supporting counsel's conduct. Havens's counsel repeatedly stated at trial that the defense theory was that Havens was not attempting to shoplift; and the record does not show that there was any evidence other than Havens's bare assertions that she had suffered a head injury that prevented her from remembering she was trespassed from Wal-Mart. Had counsel also pursued a defense based on Havens's head injury causing her to not realize she was entering the Wal-Mart unlawfully, the State could have chosen to ask the trial court for a lesser included instruction on theft. Without additional evidence regarding Havens's head injury, both defenses would have relied on the jury's credibility determinations. Under these circumstances, it was reasonable for counsel to choose an all or nothing defense. Because this was a reasonable

---

[12] Again, if additional evidence exists supporting this claim, then Havens may produce that evidence in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

No. 43362-1-II

tactical decision, this argument also fails.  *Grier*, 171 Wn.2d at 43 ("all or nothing strategy" can be a reasonable tactical decision).

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson,

We concur:

Hunt, J.

Worswick, C.J.

16