132 P.3d 1128 (2006)
STATE of Washington, Respondent,
v.
Andres GONZALEZ-LOPEZ, Appellant.
No. 53592-7-I.
Court of Appeals of Washington, Division 1.
May 1, 2006.
*1129 Eric Broman, Nielsen Broman & Koch, Seattle, for Appellant.
Mary K. Webber, Snohomish County Prosecutors Office, Everett, for Respondent.
*1130 COX, J.
¶ 1 At issue is whether the penalty classifications of bail jumping are essential elements of that crime. Specifically, we decide whether the penalty classifications (class A, B, or C felony or misdemeanor) of bail jumping must be included in an information or a "to convict" jury instruction. Andres Gonzalez-Lopez contends that the omission of a statement that his bail jumping charge was a class A felony from the information and the "to convict" instruction were constitutional errors requiring reversal. Because such a statement is not an essential element of that crime, we disagree and affirm.
¶ 2 In February 2002, the State charged Gonzalez-Lopez with attempted first degree child molestation. Later that year, Gonzalez-Lopez posted bail and the court entered an order directing his release pending trial. He failed to appear for trial, and the court issued a bench warrant. Following his apprehension, the State added bail jumping and first degree child molestation charges in an amended information.
¶ 3 At trial, Gonzalez-Lopez did not object either to the amended charge for bail jumping or to the State's proposed "to convict" instruction for bail jumping.[1] The jury acquitted him of the child molestation charges but convicted him of bail jumping.
¶ 4 Gonzalez-Lopez appeals.

SUFFICIENCY OF THE INFORMATION
¶ 5 For the first time on appeal, Gonzalez-Lopez argues that his conviction for bail jumping should be reversed because the amended information merely alleges that the underlying charge for bail jumping was attempted first degree child molestation, a felony. Specifically, he claims that it must also allege that the underlying charge of child molestation is a "class A felony." He bases this claim on the assertion that "class A felony" is an essential element of bail jumping and that its omission from the information was constitutional error that requires reversal. We disagree.

Express Essential Element
¶ 6 In every prosecution, the defendant must be informed of the nature and cause of the accusation.[2] A charging document must allege facts supporting every element of the offense, and must adequately identify the crime charged.[3] The objective of this "essential elements" rule is to give notice to an accused of the nature of the crime so that the accused can prepare an adequate defense.[4]
¶ 7 The elements of a crime are those facts "that the prosecution must prove to sustain a conviction."[5] Since it is the legislature that defines crimes, we first look to the relevant statute to determine the elements of a crime.[6] The purpose of looking to *1131 the statute is to determine the legislature's intent in defining the elements of a crime.[7] Where the plain words of a statute are unambiguous, we do not construe the statute.[8]
¶ 8 When an information is challenged post-conviction, a liberal standard applies.[9] An information will be upheld on appeal under the liberal standard, if "an apparently missing element ... [may] be fairly implied from language within the charging document."[10] The test is: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?"[11]
¶ 9 A challenge to the sufficiency of a charging document is of constitutional magnitude and may be raised for the first time on appeal.[12] We review a challenge to the sufficiency of a charging document de novo.[13]
¶ 10 We first note that the liberal or strict standard applies to determine whether an information contains constitutionally sufficient notice of the essential elements of a crime. Here, we identify what the essential elements of bail jumping are. Thus, we need not address what standard  liberal or strict  applies in this case.
¶ 11 The amended information that he now challenges states:
Count III: Bail Jumping, committed as follows: That the defendant, on or about the 23rd day of August, 2002, being charged with Attempted Child Molestation in the First Degree, a felony, and having been admitted to bail with the requirement of a subsequent personal appearance before Snohomish County Superior Court, a court of the State of Washington, and knowing of the requirement of the subsequent personal appearance, did fail to appear as required, proscribed by RCW 9A.76.170(1), a felony.[[14]]
¶ 12 Thus, the threshold question is whether "class A felony," the punishment class of bail jumping that applies here,[15] is an essential element of that crime so that it should have been alleged in this information.
¶ 13 In State v. Miller, the supreme court recently considered whether the validity of a no-contact order is an essential element of the crime for violating such an order for purposes of a "to-convict" jury instruction.[16] There, Miller was arraigned on a fourth degree assault charge.[17] At the time, the court issued a no-contact order prohibiting him from contact with the victim of the alleged assault.[18] While the order was in effect, a police officer stopped Miller's car for a traffic violation and discovered the victim in the car with him.[19] The officer arrested Miller for violation of the order.[20]
¶ 14 At trial, a major issue was whether the "to convict" instruction, which was based on a pattern jury instruction, should have included a statement that the no-contact order was a valid order. The pattern instruction did not include such language. Following his conviction, Miller appealed to this court, which affirmed. After granting Miller's *1132 petition for review, the supreme court also affirmed.
¶ 15 In its analysis, the supreme court first examined the words of the statute defining violation of a no-contact order. The court observed that neither the statute nor its legislative history indicated that a "valid" order is an essential element of the crime for purposes of the "to convict" instruction.[21]
¶ 16 Applying that approach here, we first examine the words of the bail jumping statute to determine whether the penalty classes of bail jumping are express essential elements of that crime, as defined by the legislature. The bail jumping statute states in part:
Bail jumping. (1) Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.

...
(3) Bail jumping is:
(a) A class A felony if the person was held for, charged with, or convicted of murder in the first degree;
(b) A class B felony if the person was held for, charged with, or convicted of a class A felony other than murder in the first degree;
(c) A class C felony if the person was held for, charged with, or convicted of a class B or class C felony;
(d) A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.[[22]]
¶ 17 A plain reading of the statute shows that section (1) defines the elements of the crime for the purpose of determining guilt. The State must prove beyond a reasonable doubt that a person has been "released by court order or admitted to bail," the requisite knowledge of either a "subsequent personal appearance" or a "requirement to report to a correctional facility for service of sentence," and a failure to either "appear or [surrender for service of sentence]." Significantly, section (1) does not include within the elements defining guilt any reference to the provisions of section (3) of the statute, which defines the penalty classes of bail jumping.
¶ 18 We conclude that the express essential elements of the crime of bail jumping stated in section (1) of the statute do not include the penalty classes of bail jumping as essential elements of the crime. There is no need to construe the statute. The words are plain and unambiguous.

Implied Essential Elements
¶ 19 Gonzalez-Lopez does not argue that the plain words of section (1) of the statute expressly include the penalty classes set forth in section (3). Nor does he argue that section (1) is ambiguous. Rather, he essentially argues that the penalty classes of bail jumping are implied essential elements. We are unpersuaded by this argument.
¶ 20 Miller also offers clear guidance in this respect. The supreme court noted there that our courts have, on limited occasions, articulated nonstatutory elements of crimes.[23] Citing State v. Boyer[24] and State v. Hall,[25] the court explained when courts imply such nonstatutory elements.
¶ 21 In the former case, the court concluded that the legislature could not have intended a strict liability crime for delivery of a controlled substance. Thus, the court held that the State must also prove "guilty knowledge" in a VUCSA prosecution for that crime.
¶ 22 In the latter case, the court held that an implied essential element of the crime of robbery is that the property was taken from the possession of another. The court implied this element based on "a near eternity of *1133 common law and a common understanding" of that crime.
¶ 23 Here, Gonzalez-Lopez argues that facts that impose more serious punishment are essential elements of an offense and must be alleged in the information. For support, he relies on State v. Goodman.[26]
¶ 24 That case was a prosecution for unlawful possession of a controlled substance, methamphetamine. The information alleged that Goodman "did unlawfully possess with intent to deliver a controlled substance, to wit: Methamphetamine."[27] An amended information alleged possession of "a controlled substance with intent to deliver, to wit: meth."[28] He was convicted, as charged.
¶ 25 For the first time on appeal, Goodman challenged the sufficiency of the amended information, claiming it lacked all essential elements of a violation of the criminal statute. The court of appeals affirmed, stating:
Mr. Goodman's list of controlled substances containing the syllable "meth" undercuts his own argument because possession of any one of them is a crime under RCW 69.50.401(a). Although the specific controlled substance the defendant allegedly manufactured, delivered, or intended to deliver may result in a different sentence, 5 or 10 years, the core crime is the same. Naming the specific controlled substance in an information alleging a single violation of RCW 69.50.401(a) is surplusage.[[29]]
¶ 26 Our supreme court granted Goodman's petition for review and held that the above quotation is wholly inconsistent with the Apprendi line of cases from the Supreme Court.[30] Specifically, our supreme court held that "the identity of [a] controlled substance is an element of [an] offense where it aggravates the maximum sentence with which the court may sentence a defendant."[31]
¶ 27 The statute at issue in Goodman begins with a generic definition of the crime: "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."[32] Five subsections follow, establishing that violation of the crime will be punishable by a maximum of either five or ten years, depending on which controlled substance is involved.[33] Goodman's conviction of possession of methamphetamine with intent to deliver carried a maximum sentence of 10 years.
Because the statutory maximum sentence increased depending on which controlled substance Goodman possessed, the identity of that controlled substance was a "fact that increases the penalty for a crime beyond the prescribed statutory maximum". [Quoting Apprendi.] Therefore, the prosecution was obligated to allege and prove the substance Goodman possessed was methamphetamine.[34]
¶ 28 The supreme court ultimately affirmed the conviction in Goodman because the amended information did allege possession of "meth." The court concluded this sufficiently identified methamphetamine as the substance in question. Moreover, there was no actual prejudice because the original information had fully spelled out the name of the drug.[35]
¶ 29 Gonzalez-Lopez relies on Goodman to argue that facts that impose more serious punishment for the crime of bail jumping must be alleged in the information. The supreme court characterized such facts as "essential elements" in Goodman. He uses a similar characterization here. We agree that this portion of Gonzolez-Lopez's argument is consistent with the principle articulated in Goodman.
¶ 30 But Gonzalez-Lopez also contends that this principle requires that the amended *1134 information before us must contain a statement of "the class of the underlying charged offense" for bail jumping. We disagree.
¶ 31 As he points out, the bail jumping statute is analogous in structure to the controlled substances statute. The maximum sentence for bail jumping increases depending on a particular fact that the State must plead:
Bail jumping. (1) Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.
...
(3) Bail jumping is:
(a) A class A felony if the person was held for, charged with, or convicted of murder in the first degree;
(b) A class B felony if the person was held for, charged with, or convicted of a class A felony other than murder in the first degree;
(c) A class C felony if the person was held for, charged with, or convicted of a class B or class C felony;

(d) A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.[[36]]
¶ 32 The question is whether the amended information here, which alleged that the underlying offense with which Gonzalez-Lopez was charged was "attempted child molestation," is constitutionally sufficient. Does this information plead facts that aggravate the maximum sentence with which the court may sentence the defendant?
¶ 33 We hold that the amended information in this case is constitutionally sufficient. There is no dispute that the amended information contains allegations that conform to section (1) of the bail jumping statute. Under section (2) of the statute, the additional fact that is necessary to apprise Gonzalez-Lopez of which more serious punishment is involved is that he was charged with "attempted child molestation." That underlying charge of attempted first degree child molestation is a class A felony.[37] As such, the proper category of punishment for bail jumping in this case is as a "class B" felony.[38] There is no requirement here that the State also plead the class of the underlying felony of attempted child molestation. Pleading either the underlying charge or the class of the underlying offense would be sufficient to apprise the defendant of the aggravated sentencing possibility.
¶ 34 Gonzalez-Lopez also relies on State v. Ibsen[39] to support his argument the amended information here must state the class of either the underlying offense or the class of the bail jumping charge. While that court properly recognized the importance of the penalty section of the bail jumping statute, we question whether the rationale used to reach that result is sound.
¶ 35 There, Division Two of this court reversed a felony bail jumping conviction because the information contained no reference to the underlying crime, which the court characterized as an essential element of the offense.[40] The Ibsen court was faced with a post-conviction challenge to the sufficiency of the information that stated:
The defendant, in the County of Cowlitz, State of Washington, on or about October 02, 1997, having been admitted to bail with the requirement of a subsequent personal appearance before Cowlitz County Superior Court, a court of the State of Washington, did knowingly fail to appear as required contrary to RCW 9A.76.170(1) and *1135 against the peace and dignity of the State of Washington.[[41]]
¶ 36 Noting that the information closely followed section (1) of the bail jumping statute, the court observed that it ignored former section (2), the penalty classifications section. The court went on to explain why it concluded former section (2) is important for purposes of the information. The court adopted an analogy to welfare fraud cases where the degree of the crime depends on the amount of money involved. In doing so, it cited language from a supreme court case, State v. Delcambre.[42] The Ibsen court concluded that the underlying offense of a bail jumping charge is relevant only to determine the penalty imposed following conviction. Using the welfare fraud cases as an analogy, the court reasoned that the underlying offense must be an essential element of bail jumping.[43]
¶ 37 We are unpersuaded that the welfare fraud analogy is appropriate to apply to the bail jumping statute. While the penalties for bail jumping are divided into classes, the crime itself is not. Ibsen focuses on one passage in Delcambre to support its rationale.[44] But more recent supreme court authority clarifies what it meant in that earlier passage:
[T]he rationale for [Campbell and Delcambre] was that the welfare fraud statute implicitly incorporates the degree structure of the theft statutes, and therefore value is required in order to prove the degree .... [M]erely charging welfare fraud fails to apprise the defendant of the degree of theft incorporated into the charge, just as failing to include value when charging multiple degrees of theft fails to apprise the defendant of which conduct violated which theft statute.... Campbell and its precursor Delcambre provide no guidance on whether value is an essential element of third degree theft.[[45]]
Thus, the welfare fraud analogy that Ibsen adopts for the bail jumping statute appears less sound in light of subsequent case authority from the supreme court.
¶ 38 The other authority on which Ibsen relies, United States v. Carll,[46] fails to convince us that the penalty classes of bail jumping are essential elements of the crime. A close reading of that federal case merely supports the unremarkable proposition that an indictment must "set forth all the elements necessary to constitute the offence intended to be punished."[47]
¶ 39 Finally, Goodman, which extends the concept of essential element to matters required under the Apprendi line of cases, neither cites nor relies on the rationale of Ibsen.
¶ 40 Gonzalez-Lopez also relies on State v. Green.[48] That case is distinguishable. In Green, the accused "was told the superior court cause number of the underlying charge."[49] The court held that the information was insufficient because it did not contain all the essential elements of bail jumping.[50] Here, the accused was given more than the court cause number. The amended information specified the underlying charge, attempted child molestation.
¶ 41 Finally, Gonzalez-Lopez acknowledges that no published decision supports his argument. But he argues that where an information includes neither the class of bail jumping nor the class of the underlying offense, *1136 such an information is constitutionally deficient. He contends that where an accused defendant cannot tell whether the State charges him with a class B or class C felony bail jumping, he has failed to receive sufficient notice.
¶ 42 We reject these assertions on the basis of the analysis we have discussed. The bail jumping statute identifies the express essential elements of the crime. Moreover, the amended information in this case stated the fact that allowed the accused to determine the increased penalty. That fact was that the underlying charge was attempted child molestation.
¶ 43 We conclude that the amended information in this case was sufficient. It includes all the essential elements of the crime of bail jumping. "Class A felony" is not an essential element.

SUFFICIENCY OF THE "TO CONVICT" INSTRUCTION
¶ 44 Gonzalez-Lopez next argues that the failure to include in the "to convict" jury instruction a statement that first degree attempted child molestation is a "class A" felony is a constitutional violation requiring reversal. Specifically, he argues that bail jumping is "in essence, an offense divided into different degrees," and the degree of the offense is an essential element that must be included in the "to convict" instruction. He further argues that the class of the offense is a fact that must be submitted to the jury and proven beyond a reasonable doubt. We again disagree.
¶ 45 A "`to convict' instruction must contain all of the elements of the crime because it serves as a `yardstick' by which the jury measures the evidence to determine guilt or innocence."[51] The missing element supplied by other instructions does not cure the defect.[52] Omission of an element relieves the State of its burden to prove every essential element beyond a reasonable doubt.[53] Failure to instruct on an essential element is automatic reversible error.[54] This court reviews the adequacy of a challenged "to convict" jury instruction de novo.[55]
¶ 46 Here, the "to convict" instruction, which was based on WPIC 120.41, given to the jury stated in relevant part:
To convict the defendant of the crime of Bail Jumping as charged in Count III, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 23rd day of August, 2002, the defendant knowingly failed to appear as required before a court;
(2) That the defendant was charged with Attempted Child Molestation in the First Degree;
(3) That the defendant had been released by court order or admitted to bail with the requirement of a subsequent personal appearance before that court; and
(4) That the acts occurred in the State of Washington.[[56]]
¶ 47 The second numbered paragraph of the "to convict" instruction required the jury to find that Gonzalez-Lopez "was charged with Attempted Child Molestation in the First Degree" in order to return a verdict of guilty on the bail jumping charge. As we have already discussed in addressing Goodman, specification of the underlying offense for the bail jumping charge was sufficient for purposes of providing the constitutionally required notice in the amended information. It is also constitutionally sufficient to provide an essential element in the to convict instruction. There was no error.
¶ 48 We affirm the judgment and sentence.
I CONCUR: COLEMAN, J.
*1137 BECKER, J. (concurring).
¶ 49 I agree that the information and "to-convict" instruction in this case contain the essential elements of the crime of bail jumping. Gonzalez-Lopez contends that the defendant must, in all cases, be notified of the felony class of the underlying offense. The State, however, correctly argues that it is enough to allege the underlying offense by name, as was done here when the State alleged the underlying charge to be "Attempted Child Molestation in the First Degree, a felony." See State v. Pope, 100 Wash. App. 624, 629, 999 P.2d 51 (2000) (An essential element of bail jumping is that the defendant was held for, charged with or convicted of a particular crime; see also WPIC 120.41).
¶ 50 I acknowledge authoring an unpublished opinion citing Pope as authority for the proposition that the information must allege the class of the underlying felony. See State v. Walker, No. 51739-2-I, 123 Wash. App. 1007, 2004 WL 1922314 (Wash.Ct.App. Aug.30, 2004). This was a misreading of Pope where the information was held insufficiently specific because instead of identifying the underlying offense by name, it merely stated "regarding a felony matter." Pope, 100 Wash.App. at 629, 999 P.2d 51. It is not implicit in Pope that the State must allege and prove the class of the underlying felony.
¶ 51 Pope followed State v. Ibsen, 98 Wash. App. 214, 989 P.2d 1184 (1999). In Ibsen, the court found the information deficient because it omitted the underlying offense altogether. Ibsen held that the underlying offense is an essential element of a bail-jumping charge because it is relevant to the penalty. After Ibsen, a similar issue arose in State v. Spiers, 119 Wash.App. 85, 79 P.3d 30 (2003). The information in Spiers did not allege the underlying offense by name, but it did allege that the underlying offense was a class B or C felony. This made the bail jumping offense a class C felony. The issue on appeal was whether, under Ibsen, the information was deficient because it did not allege the name of underlying offense. Recognizing that the fundamental concern of Ibsen was to notify the defendant of the penalty he faced, the Spiers court held that alleging the class of the underlying felony was sufficient to satisfy, on liberal post-verdict review, the element identified in Ibsen. Spiers, 119 Wash.App. at 91, 79 P.3d 30.
¶ 52 Spiers, like Ibsen and Pope, does not hold that the class of the underlying felony is itself an essential element. Gonzalez-Lopez essentially argues that it should be, because otherwise it is too difficult for a defendant to ascertain the penalty he faces. But having been apprised that the underlying offense was "Attempted Child Molestation in the First Degree, a felony", Gonzalez-Lopez could find out that the underlying offense was a Class A felony, and then deduce from the statute that the felony he was being charged was a Class A felony. Some statutes are more difficult to understand than others, but the remedy for any difficulty a defendant might experience is to request a bill of particulars. State v. Leach, 113 Wash.2d 679, 687, 782 P.2d 552 (1989).
¶ 53 In summary, our prior cases do not compel the conclusion that the information in this case was constitutionally deficient. The pattern instruction (WPIC 120.41) is correct, and practitioners need not hesitate to use it.
NOTES
[1] The State's proposed instruction and the court's instruction to the jury were based substantially on WPIC 120.41, which provides as follows:

To convict the defendant of the crime of bail jumping, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the ___ day of ___, 20 ____, the defendant knowingly failed to appear before a court;
(2) That the defendant [was being held for] [or] [was charged with] [or] [had been convicted of] ____;
(3) That the defendant had been released by court order or admitted to bail with the requirement of a subsequent personal appearance before the court; and
(4) That the acts occurred in the [State of Washington] [City of ___] [County of ___].
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
[2] U.S. Const. amend. VI; Washington Const. art. I, sec. 22 (amend.10).
[3] State v. Leach, 113 Wash.2d 679, 689, 782 P.2d 552 (1989).
[4] State v. Kjorsvik, 117 Wash.2d 93, 101, 812 P.2d 86 (1991).
[5] State v. Miller, 156 Wash.2d 23, 27, 123 P.3d 827 (2005).
[6] Id.
[7] See State v. Root, 141 Wash.2d 701, 706, 9 P.3d 214 (2000) (determining what the legislature intended to be the unit of prosecution for sexual exploitation of a minor by analyzing the statute).
[8] State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002).
[9] Kjorsvik, 117 Wash.2d at 103, 812 P.2d 86.
[10] Id. at 104, 812 P.2d 86.
[11] Id. at 105-06, 812 P.2d 86.
[12] State v. Campbell, 125 Wash.2d 797, 801, 888 P.2d 1185 (1995).
[13] Campbell, 125 Wash.2d at 801, 888 P.2d 1185.
[14] (Emphasis added.)
[15] Attempted child molestation is a class A felony. RCW 9A.28.020 (3)(a). Thus, under RCW 9A.76.170(3), the relevant penalty class of bail jumping is class A.
[16] 156 Wash.2d 23, 123 P.3d 827.
[17] Id. at 25, 123 P.3d 827.
[18] Id.
[19] Id.
[20] Id.
[21] Id. at 28, 123 P.3d 827.
[22] RCW 9A.76.170(1),(3) (emphasis added).
[23] Miller, 156 Wash.2d at 28, 123 P.3d 827.
[24] 91 Wash.2d 342, 588 P.2d 1151 (1979).
[25] 54 Wash. 142, 102 P. 888 (1909).
[26] 150 Wash.2d 774, 83 P.3d 410 (2004).
[27] Id. at 779, 83 P.3d 410.
[28] Id.
[29] Id. at 785, 83 P.3d 410 (emphasis in original).
[30] Id.
[31] Id. at 785-86, 83 P.3d 410.
[32] Former RCW 69.50.401(a).
[33] Former RCW 69.50.401(a)(1)(i-v).
[34] Goodman, 150 Wash.2d at 786, 83 P.3d 410.
[35] Id. at 786, 83 P.3d 410.
[36] RCW 9A.76.170(1)(3) (emphasis added).
[37] RCW 9A.28.020(3)(a).
[38] See State v. Pope, 100 Wash.App. 624, 999 P.2d 51 (2000) (An essential element of bail jumping is that the defendant was held for, charged with or convicted of a particular crime; see also WPIC 120.41).
[39] 98 Wash.App. 214, 217, 989 P.2d 1184 (1999).
[40] Id. at 215, 989 P.2d 1184.
[41] Id.
[42] Id. at 217, 989 P.2d 1184 (citing 116 Wash.2d 444, 805 P.2d 233 (1991)).
[43] Id.
[44] See Delcambre, 116 Wash.2d at 451, 805 P.2d 233 ("[A]n information that charges welfare fraud in the language of the statute, plus the monetary amount involved to determine the penalty, apprises a defendant with reasonable certainty of the charge against him.") (emphasis added).
[45] State v. Tinker, 155 Wash.2d 219, 224 n. 3, 118 P.3d 885 (2005) (emphasis added).
[46] 105 U.S. 611, 26 L.Ed. 1135 (1881).
[47] Id. at 612, 26 L.Ed. 1135
[48] 101 Wash.App. 885, 6 P.3d 53 (2000), review denied, 142 Wash.2d 1018, 16 P.3d 1266 (2001).
[49] Id. at 891, 6 P.3d 53.
[50] Id.
[51] State v. DeRyke, 149 Wash.2d 906, 910, 73 P.3d 1000 (2003) (citations omitted).
[52] Id.
[53] State v. Smith, 131 Wash.2d 258, 265, 930 P.2d 917 (1997).
[54] State v. Pope, 100 Wash.App. 624, 628, 999 P.2d 51 (2000).
[55] State v. Mills, 154 Wash.2d 1, 7, 109 P.3d 415 (2005).
[56] Clerk's Papers at 62.