# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2018 APR 23 AM 9:08
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75700-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| RAMANVEER SINGH BAINS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: April 23, 2018 |
| | ) | |

Cox, J. — Ramanveer Bains appeals his convictions for communication with a minor for immoral purposes and child molestation. The evidence is sufficient to support the communication conviction. The trial court did not abuse its discretion by refusing to give a diminished capacity instruction. There was no prosecutor misconduct warranting reversal. We affirm.

On September 1, 2013, J.C. went to Bains's house where Bains touched J.C.'s genitals through his clothing. Bains was 25 years old at the time, and J.C. was 11.

J.C. returned the next day to the same house and went into Bains's bedroom where Bains was present. Bains showed J.C. pornography on his computer, and masturbated with the aid of a sex toy.

Concerned for her child's whereabouts, J.C.'s mother called the police. Deputy Daniel Tenbrink responded to the call and found J.C. at Bains's house. He took J.C. home.

Detective Thomas Dittoe was assigned to investigate. He arranged for J.C. to be interviewed by a child interview specialist. Based on that interview and Detective Dittoe's investigation, the State charged Bains with one count of first degree child molestation and one count of communication with a minor for immoral purposes. A jury found Bains guilty of both crimes.

He appeals from the court's judgment and sentence.

## SUFFICIENCY OF THE EVIDENCE

Bains argues that insufficient evidence supported his conviction for communication with a minor. We disagree.

RCW 9.68A.090 makes it unlawful to "communicate[] with a minor for immoral purposes." Communication includes conduct as well as words.[1] It requires both transmittal by the defendant and receipt by the victim, but the victim need not understand the sexual nature of the communication.[2] And "immoral purposes" refers to a "'predatory purpose of promoting [a minor's] exposure to and involvement in sexual misconduct.'"[3] "An invitation or inducement to engage

---

[1] State v. Hosier, 157 Wn.2d 1, 11, 133 P.3d 936 (2006).

[2] Id. at 9.

[3] Id. (quoting State v. McNallie, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993)).

in behavior constituting indecent liberties with or without consideration, for example, would also satisfy the statute."[4]

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the relevant crime proven beyond a reasonable doubt.[5] In challenging sufficiency of the evidence, the defendant "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[6]

Here, the evidence is more than sufficient to allow a rational trier of fact to find that Bains communicated with a minor within the meaning of RCW 9.68A.090. He engaged in extensive communicative conduct with a minor. First, Bains touched J.C.'s genital area through his pants. The next day, he showed the victim pornography. While the video played, and in the victim's presence, Bains masturbated with the use of a sex toy.

The jury could further find that such communication was for the purpose of exposing J.C. to, and involving him in, sexual misconduct, either by enticing him to touch Bains sexually, or by exposing him to an act of indecent exposure.[7]

Bains argues that RCW 9.68A.090 requires a defendant to induce a minor into sexual misconduct by some form of consideration. Specifically, he contends that the State presented the theory that Bains held out a motorbike to J.C. as

---

[4] McNallie, 120 Wn.2d at 934.

[5] State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

[6] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[7] See RCW 9A.88.010(1).

3

consideration to induce him into sexual misconduct. He argues that the State had the burden to prove this theory and that sufficient evidence does not support it. This argument misconstrues this record and the elements of the crime.

The legislature defines the elements of a crime, not the State in its probable cause affidavit or closing arguments.[8] As stated, "[a]n invitation or inducement to engage in behavior constituting indecent liberties with or without consideration" satisfies the statute.[9]

The State noted once in its closing argument that J.C. may have approached Bains because he wanted to see the motorbike. But the State never asked the jury to find that Bains held out the motorbike in order to induce J.C. into sexual misconduct. Rather, the closing arguments of the parties focused on the "to convict" instruction, which defined the elements of the crime as follows:

(1) That on a specific date between the 1st of August, 2013, through the 3rd day of September, 2013 the defendant communicated with J.M. for immoral purposes of a sexual nature;
(2) That J.M. was a minor; and
(3) That this act occurred in Snohomish County.[10]

This instruction did not ask the jury to find that Bains held out any sort of inducement. Thus, any failure to prove beyond a reasonable doubt that Bains held out the motorbike as consideration was irrelevant to the jury's verdict.

---

[8] State v. Gonzalez-Lopez, 132 Wn. App. 622, 626, 132 P.3d 1128 (2006).

[9] McNallie, 120 Wn.2d at 934.

[10] The parties and the record variably name the victim J.M. and J.C. Clerk's Papers at 71.

4

Relatedly, Bains argues that the trial court improperly failed to give a unanimity instruction. The State correctly contends that this claimed is waived.

This court does not consider a claimed error raised for the first time on appeal, unless it is a "manifest error affecting a constitutional right."[11] An error is "manifest" if it "actually affected the defendant's rights at trial."[12]

Bains properly identifies an issue of constitutional dimensions. Article 1, section 21 of the Washington constitution gives the defendant the right to a unanimous jury verdict before he is convicted.[13] When the State charges a single count but introduces evidence of more than one criminal act, the danger arises that a conviction may not be based on a unanimous jury decision as to any single act alleged.[14]

In such instance, the court must instruct the jury that it must find unanimously which act or acts were proved, or else the State must elect a single act upon which it will rely for conviction.[15]

This court reviews de novo the trial court's failure to give an instruction if based on a question of law.[16]

---

[11] State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

[12] Id. at 926-27.

[13] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).

[14] Kitchen, 110 Wn.2d at 411.

[15] Petrich, 101 Wn.2d at 569.

[16] State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015).

But Bains otherwise fails to show that an error concerning this right is "manifest" by actually affecting the right to a unanimous verdict at trial. Because inducement is not an element of the crime, the State never alleged that Bains separately committed the crime of communication with a minor by holding out the motorbike for this purpose.

Instead, the State alleged a single act for this count. That act concerned Bains's encounter with J.C. on the second day. It included exposing J.C. to Bains's masturbation and pornography. Any issue regarding the motorbike was immaterial to whether this single act satisfied the elements of the crime. In short, the claimed error is not manifest.

## DIMINISHED CAPACITY INSTRUCTION

Bains argues that the trial court abused its discretion by refusing to give a diminished capacity instruction. Because there was insufficient evidence to support giving one, we disagree.

The defendant is "entitled to have the jury instructed on his theory of the case if there is evidence to support it."[17] "If supported by evidence, a proposed instruction should be given if it properly states the law, is not misleading, and allows the party to argue his or her theory of the case."[18] The trial court must examine the evidence and draw all inferences favorable to the requesting party when determining whether the evidence supports an instruction.[19]

---

[17] State v. Hansen, 46 Wn. App. 292, 299, 730 P.2d 706 (1986).

[18] State v. Webb, 162 Wn. App. 195, 208, 252 P.3d 424 (2011).

[19] Id.

6

A defendant is entitled to a diminished capacity instruction when substantial evidence shows that the defendant has a diagnosed mental condition "and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged."[20] "It is not enough that a defendant may be diagnosed as suffering from a particular mental disorder."[21] Rather, any expert testimony "concerning a defendant's mental disorder must reasonably relate to impairment of the ability to form the culpable mental state" at the time of the crime.[22]

Notably, a defendant's diminished capacity to form the culpable mental state is distinct from his mental inability to resist the impulse to commit an act.[23] The former is a defense justifying an instruction under the proper circumstances. The latter is not.[24]

"If the claim of diminished capacity is premised wholly or partly on the defendant's voluntary consumption of drugs or alcohol, however, one instruction can be adequate to permit the defendant to argue defendant's theory of the case."[25] The supreme court has held that a voluntary intoxication instruction is

---

[20] State v. Griffin, 100 Wn.2d 417, 419, 670 P.2d 265 (1983).

[21] State v. Atsbeha, 142 Wn.2d 904, 921, 16 P.3d 626 (2001).

[22] Id. at 918.

[23] State v. Edmon, 28 Wn. App. 98, 105, 621 P.2d 1310 (1981).

[24] Id.

[25] State v. Furman, 122 Wn.2d 440, 454, 858 P.2d 1092 (1993).

7

sufficient to allow the defendant to argue his theory of the case when the diminished capacity claim is based on voluntary intoxication.[26]

This court reviews for abuse of discretion a trial court's refusal to give jury instructions based on a factual question.[27]

Here, Dr. Steven Johansen testified about Bains's diagnosed mental disorders and substance usage. He diagnosed Bains as suffering from unspecified depressive disorder, unspecified personality disorder, schizophrenia spectrum, and alcohol and cannabis disorders in earlier remission. He also noted Bains's "history of very impulsive actions." As a result, Bains had been prescribed as treatment for these disorders tazodone, Zoloft, propranolol, Risperdal, and Atarax. These drugs would have produced a sedative and disorienting effect, exacerbated by Bains's heavy use of marijuana and alcohol. Notably, these substances would also disinhibit his impulse control. Dr. Johansen testified that Bains was taking a combination of substances that "would impede his awareness. It would impede his judgment. . . . [I]t impedes his – increases his impulsivities in a lot of ways." And as a result, it could have caused him to act on his desires more than he would have sober.

Bains proposed both a diminished capacity instruction and a voluntary intoxication instruction. The trial court found that Dr. Johansen had testified "all about substances and not about a mental disease or defect at all, or at least certainly not primarily." It further concluded that although Dr. Johansen noted

---

[26] Id.

[27] Condon, 182 Wn.2d at 315-16.

Bains's diagnoses, he did not connect them to any diminishment of capacity. Accordingly, it declined to give a diminished capacity instruction.

But it did give a voluntary intoxication instruction based on the same evidence. This allowed Bains to argue his theory of voluntary intoxication, which addresses whether one has the requisite intent to commit the crime charged.

The trial court did not abuse its discretion in concluding that a diminished capacity instruction was inappropriate in light of the evidence. While Dr. Johansen testified that he could diagnose Bains as suffering from several mental disorders, he could not "reasonably relate [these disorders] to impairment of the ability to form the culpable mental state."[28] Instead, he testified about the effect of certain prescription and nonprescription substances. Several of these had a disinhibiting effect, provoking the sort of irresistible impulse that is no defense.

The evidence shows that if Bains's mental state was compromised, it was by intoxicating substances and not a mental disorder. Thus, the trial court properly instructed the jury on voluntary intoxication rather than diminished capacity.

Bains argues that the trial court refused to instruct the jury on diminished capacity on the improper basis that Bains's mental disorders *alone* did not diminish his capacity. We do not read the record in the way he does. The denial of the requested instruction was proper, as we discussed.

---

[28] Atsbeha, 142 Wn.2d at 918.

Bains argues that the failure to instruct the jury on diminished capacity was reversible error. He relies for this contention on State v. Cienfuegos.[29] But his reliance is misplaced.

In that case, Guillermo Cienfuegos appealed his conviction for escape, claiming that he received ineffective assistance of counsel.[30] He argued that his counsel should have proposed an instruction on diminished capacity, and that the failure to do so had prejudiced him.[31]

The supreme court agreed that Cienfuegos was entitled to this instruction.[32] But it concluded, under Strickland v. Washington,[33] that Cienfuegos failed to show "the existence of a reasonable probability" that but for counsel's error, the result would have been different.[34]

The court emphasized that the jury had been instructed on the State's burden to prove knowledge and intent, from which counsel for both sides had argued about Cienfuegos's ability to have such knowledge or form the requisite intent.[35] The court held that this instruction allowed the jury to take into account

---

[29] 144 Wn.2d 222, 25 P.3d 1011 (2001).

[30] Cienfuegos, 144 Wn.2d at 224.

[31] Id. at 227.

[32] Id.

[33] 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[34] Cienfuegos, 144 Wn.2d at 229.

[35] Id.

10

any alleged mental impairment.[36] "The diminished capacity instruction would have highlighted that fact and should have been given, but even without it defense counsel was able to argue his theory of the case."[37]

Here, the trial court provided this instruction on voluntary intoxication:

No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted with the purpose of sexual gratification as to Count I or for immoral purposes of a sexual nature as to Count II.[38]

This instruction was sufficient to allow Bains's counsel to argue that his substance use, as shown in the record, affected his ability to act with the requisite purpose. This is sufficient.

## PROSECUTOR MISCONDUCT

Bains argues that reversal is required for flagrant prosecutorial misconduct that raises manifest constitutional error. We disagree.

A defendant who fails to object, waives his argument as to prosecutorial misconduct unless the challenged conduct was "so 'flagrant and ill intentioned' that it cause[d] enduring and resulting prejudice that a curative instruction could not have remedied."[39]

---

[36] Id. at 230.

[37] Id.

[38] Clerk's Papers at 73.

[39] State v. Boehning, 127 Wn. App. 511, 518, 111 P.3d 899 (2005) (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

"A witness may not testify about the credibility of another witness."[40]

The supreme court has recognized that a law enforcement officer's testimony as to the victim's credibility "often carries a special aura of reliability" that may especially prejudice the defendant.[41] But the court has also recognized that a law enforcement witness does not impermissibly testify to the victim's credibility by simply testifying to the "interview protocol he used to obtain [the victim's] statement" without testifying to whether the victim told the truth in that interview.[42] Such a witness "'merely provide[s] the necessary context that enabled the jury to assess the reasonableness of the . . . responses.'"[43] Such testimony may be helpful, for example, in explaining interview protocols used to educate minors on how to tell the truth.[44]

"[E]ven if there is uncontradicted testimony on a victim's credibility, the jury is not bound by it. Juries are presumed to have followed the trial court's instructions, absent evidence proving the contrary."[45]

---

[40] State v. Jones, 117 Wn. App. 89, 91, 68 P.3d 1153 (2003).

[41] Kirkman, 159 Wn.2d 928.

[42] Id. at 931.

[43] Id. (quoting State v. Demery, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001)).

[44] Id.

[45] Id. at 928.

This court reviews for abuse of discretion the trial court's admission of testimonial evidence.[46]

Detective Dittoe and Deputy Tenbrink both testified, without objection, regarding the practices of Dawson Place, a nonprofit sexual assault center hosting the multidisciplinary special investigations unit.

Detective Dittoe testified that he was assigned to the special investigations unit, and received specialized training for this purpose. He explained that the unit included Sheriff's office detectives, nurses, counselors, social workers, and prosecutors. He described it as a "child safe, child friendly environment that allows victims to come to one location to obtain services rather than [being] sent all over the county to hospitals, maybe a police agency that seems to be a little cold or uninviting for minors."

According to his testimony, a child interview specialist and not a law enforcement officer would serve as the child victim's "contact point." The interview specialist is trained "to interview the younger children in a way that's nonleading and nonsuggestive and just gather what the child wants to say." Detective Dittoe was present at J.C.'s interview. The interview specialist is employed to ensure police "gather the most accurate statement" possible.

Detective Dittoe contrasted this safe, open model to that presented by the probing atmosphere of trial. He explained that "the child during the interview has the choice whether they even want to answer the question or not . . . it's not a direct questioning type of situation like [trial] where specific questions are being

---

[46] Id. at 927.

13

asked in order to have a direct answer." And by interviewing the child in such an environment early in the investigation, police can avoid the risk of "time going by, whether an individual was going to forget information or just emotionally not recall."

Deputy Tenbrink gave similar testimony. He explained that the special investigations unit at Dawson Place was "better equipped, better trained than patrol deputies are to interview" child sex crime victims. He noted that alongside law enforcement, nurses, and child interview specialists, Dawson Place also housed prosecutors, including the prosecutor in this case. He did not testify regarding J.C.'s specific interview.

Here, neither Detective Dittoe nor Deputy Tenbrink improperly testified as to J.C.'s credibility. They simply explained the interview protocol used to obtain J.C.'s earlier testimony. They noted its child-focused structure, based around a feeling of safety and open-ended questioning. In no way did either witness suggest that J.C.'s statements in that environment or on trial would be more credible as a result. Neither did they testify to the content of those statements.

We need not further discuss this argument.

Bains next argues that the prosecutor committed flagrant misconduct by personally vouching for J.C.'s credibility. We again disagree.

A defendant "must show that the prosecutor's conduct was improper and prejudiced his right to a fair trial" to show prosecutorial misconduct.[47] To show

---

[47] Boehning, 127 Wn. App. at 518.

prejudice, the defendant must show a "'substantial likelihood the instances of misconduct affected the jury's verdict.'"[48]

"A prosecutor commits misconduct by vouching for a witness's credibility."[49] The prosecutor may do so in two ways, either by "plac[ing] the prestige of the government behind the witness or [by] indicat[ing] that information not presented to the jury supports the witness's testimony."[50] A prosecutor does not commit misconduct by drawing an inference from evidence at trial that a witness had no motivation to lie.[51]

This court reviews a prosecutor's comments in closing argument in light of the "total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions."[52] The prosecutor may draw and express reasonable inferences from the evidence and instructions.[53] But the prosecutor may not make comments "that are unsupported by the evidence and prejudice the defendant."[54]

---

[48] Id. (quoting State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003)).

[49] State v. Robinson, 189 Wn. App. 877, 892, 359 P.3d 874 (2015).

[50] Id. at 893.

[51] Id.

[52] Boehning, 127 Wn. App. at 519.

[53] Id.

[54] Id.

For example, a prosecutor cannot comment in closing that a victim's "out-of-court statements were consistent with her statements at trial and that she had disclosed *even more*" pretrial when such disclosures were ruled inadmissible.[55]

A defendant who fails to object, waives his argument as to prosecutorial misconduct unless the challenged conduct was "so 'flagrant and ill intentioned' that it cause[d] enduring and resulting prejudice that a curative instruction could not have remedied."[56]

Here, the prosecutor argued in her closing argument that "[t]he prosecutors that stand up for victims of sexual assault in court don't get to choose their victims. It's not a TV show. We don't get to go to central casting."

The prosecutor stated that J.C.:

could not conceive that this is where he would end up, that he would have to tell the same story the way he did to his mother, to a forensic interviewer overheard by the detective, to a defense attorney, to a prosecutor, over and over telling this story about what happened, the same story consistently. He could not conceive [that] this is where it would end up. So what possible reason would he have to fabricate it?[57]

The prosecutor noted J.C.'s anxiety "as he was trying to tell you what happened, talking about how he didn't like the 20 of you looking at him." And she noted that evidence found on investigation of Bains's house corroborated J.C.'s trial testimony.

---

[55] Id. at 522.

[56] Id. at 518 (quoting Russell, 125 Wn.2d at 86).

[57] Report of Proceedings Vol. 4 (May 19, 2016) at 340.

In rebuttal closing arguments, the prosecutor responded to Bains's argument that J.C. had lied to deflect blame from breaking curfew. She suggested that it was not reasonable for J.C. to repeat his difficult story for three years simply to evade blame for this infraction.

The State neither placed the government's prestige behind the witness, nor indicated that it had information not presented that supported the witness's credibility. The prosecutor made a generalized rhetorical statement that certain prosecutors prosecute sex crimes, and that they cannot choose the victims. Such a statement does not imply any victim is especially credible or that sex crime prosecutors bring some special prestige.

The prosecutor also did not reference out-of-court evidence. Testimony at trial showed that J.C. had been interviewed regarding his interaction with Bains and had discussed the matter with his mother. And J.C. testified at trial to that same conduct. Thus, the prosecutor relied only on evidence before the jury to state that J.C. had told his story repetitively. She drew a reasonable inference from that evidenced to suggest that J.C. had no motive to fabricate his story.

In explaining the burden of proof beyond a reasonable doubt, the prosecutor suggested that the jurors might "have questions because I didn't – I didn't think to ask the right question. Maybe you have questions because we weren't allowed. But you can only have questions about things that are contained within the elements of these crimes." This argument was not improper. Rather than urging the jury to focus on facts not in evidence, it urged the jury to do just the opposite. Bains merely speculates otherwise.

17

State v. Boehning[58] is instructive. In that case, Randy Boehning appealed his conviction for molesting a child in his foster care.[59] Prior to trial, the child victim had disclosed to a subsequent foster parent that Boehning "had made her do 'nasty' things."[60] The subsequent foster parent reported these statements to the child's caseworker.[61] Three years later, the child again disclosed the abuse to her family's social worker who informed police.[62]

A police detective interviewed the child, and based on that interview, Boehning was arrested.[63] The State charged him with three first-degree rape counts and three first-degree child molestation counts.[64] The subsequent foster parent, social worker, and police detective all testified at trial to the child's earlier statements.[65] But because the child victim would not testify to certain incidents, the State dismissed the rape counts and amended the information accordingly.[66]

---

[58] 127 Wn. App. 511, 111 P.3d 899 (2005).

[59] Id. at 513.

[60] Id. at 514.

[61] Id.

[62] Id.

[63] Id. at 515.

[64] Id.

[65] Id.

[66] Id. at 516.

In closing arguments, the prosecutor argued that the child

was not able to 'talk with this group of strangers *as well as she was able to do it one-on-one in the past* and that there were '*some other charges, those charges aren't present anymore because she didn't want to talk about this as much as she was willing to talk about it before.*'[67]

The prosecutor further stated that, because the child victim would have felt safer in the pretrial conversations than at trial, "'*It's reasonable that this child might have gone a little farther in discussing what happened to her in a safer environment.*'"[68] The prosecutor explicitly remarked that the child had told her story in detail to other witnesses before trial.[69] The prosecutor also asked the jury to think about whether the child victim would have a reason to lie and submitted that the child's trial testimony was consistent with earlier pretrial statements.[70] The jury found Boehning guilty on all charges, and he appealed to Division Two of this court.[71]

Boehning argued that the prosecutor had committed misconduct by improperly focusing on facts outside the evidence, including the child's out of court statements, and the uncharged rape counts.[72] Division Two of this court

---

[67] Id. at 517.

[68] Id.

[69] Id.

[70] Id. at 521.

[71] Id. at 518.

[72] Id. at 519.

agreed.[73] It held that the prosecutor committed flagrant misconduct by arguing that the child's out-of-court statements, inadmissible at trial, were consistent with her trial testimony.[74] This conduct was exacerbated by the prosecutor's repeated suggestions that the child had earlier disclosed more serious allegations that would have supported the dismissed rape charges.[75]

The court emphasized that:

> In arguing that [the child's] out-of-court statements were consistent with her statements at trial and that she had disclosed *even more* [pre trial] . . . the prosecutor left the jury with the impression that [other] witnesses 'had a great deal of knowledge favorable to the State which, but for the court's rulings, would have been revealed.'[76]

This "repeated attempt" constituted misconduct.[77]

The court also discussed how the prosecutor had shifted the burden by attacking Boehning's failure to establish inconsistencies between the child's pretrial and trial statements.[78] And it noted that no other witnesses or physical evidence were available to corroborate the child's testimony.[79] In such circumstances, where "the evidence arguably supported either party's version of

---

[73] Id. at 521.

[74] Id.

[75] Id.

[76] Id. at 522 (quoting State v. Alexander, 64 Wn. App. 147, 155, 822 P.2d 1250 (1992)).

[77] Id. at 523.

[78] Id.

[79] Id.

events," the court could not conclude that a rational jury would have returned the same verdict absent the improper remarks.[80]

Here, the prosecutor's remarks were not similar. The prosecutor did not rely on inadmissible evidence. She did not suggest that such evidence would have provided additional support for the charges brought or others that could have been brought. Rather, she stated that J.C. had told his story, and had been forced to tell it repeatedly. The message was not that J.C. had testified before to key information not present in his trial testimony. Rather, it was that a child, forced for several years to retell a traumatizing story, had continued to do so. The prosecutor reasonably asked the jury to infer that J.C. would not have done so based on a fabrication. And J.C.'s story was corroborated by police testimony regarding the investigation of Bains's bedroom.

Bains further argues that if no individual error is sufficient to require reversal, the cumulative effect of all alleged errors so requires. He is wrong.

"[R]eversal may be required due to the cumulative effects of trial court errors, even if each error examined on its own would otherwise be considered harmless."[81] This analysis depends on the nature of the errors. Constitutional error is harmless if "the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in absence of the

---

[80] Id.

[81] Russell, 125 Wn.2d at 93.

21

error."[82] Nonconstitutional error, by contrast, "requires reversal only if, within reasonable probabilities, it materially affected the outcome of the trial."[83]

As discussed above, there were no errors. Thus, there can be no cumulative errors.

## COSTS

Bains argues that if he should fail to prevail in this appeal, this court should not impose costs. Absent new evidence to the contrary, we agree.

RCW 10.73.160(1) gives appellate courts discretion to decline to impose appellate costs on appeal.[84] Under State v. Sinclair, there is a presumption that indigency continues unless the record shows otherwise.[85] The finding remains in effect unless the commissioner or clerk determines by a preponderance of the evidence that the defendant's financial circumstances have significantly improved since the last determination.[86]

Here, the trial court found that Bains is indigent. Nothing in this record overcomes this presumption. Thus, an award of costs would be inappropriate at this time. If the State subsequently obtains information documenting a significant

---

[82] Id. at 94.

[83] Id.

[84] State v. Nolan, 141 Wn.2d 620, 629, 8 P.3d 300 (2000).

[85] 192 Wn. App. 380, 392-93, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).

[86] RAP 14.2.

improvement in Bains's financial circumstances, it may file a cost bill with the commissioner.

We affirm the judgment and sentence, and deny any award of costs.

_____ Cox, J.

WE CONCUR: