25 P.3d 1011 (2001)
144 Wash.2d 222
STATE of Washington, Respondent,
v.
Guillermo W. CIENFUEGOS, Appellant.
No. 70003-6.
Supreme Court of Washington, En Banc.
Argued February 27, 2001.
Decided July 5, 2001.
Reconsideration Denied August 24, 2001.
*1013 James Williams Nelson, Attorney at Law, Mount Vernon, WA, for appellant.
Thomas Verge, Skagit County Prosecutor, Erik Pedersen, Deputy, Mount Vernon, WA, for respondent.
*1012 CHAMBERS, J.
Guillermo Cienfuegos (Cienfuegos) was convicted of escape. The primary issue raised by Cienfuegos in his appeal is whether counsel's failure to request a diminished capacity instruction was ineffective assistance of counsel. He also contends that Washington State's system for jury pool selection is unconstitutional and failed to provide an ethnically representative jury panel. We hold that he has failed to meet the requirements to prevail on either contention and affirm his conviction.

STATEMENT OF FACTS
Cienfuegos has the unenviable credential of being a long time drug user. He started taking drugs as early as age five. He described himself as "not just an addict .... a junkie." II Verbatim Report of Proceedings (VRP-II) at 155.
Cienfuegos was arrested for failure to appear for sentencing on a felony drug conviction. Shortly before his arrest Cienfuegos ingested drugs, likely heroin and cocaine. He spent the evening in jail, suffering from withdrawal. The next day Cienfuegos was taken from the jail to the courthouse by three correctional officers, where he was arraigned without incident. Cienfuegos, wearing the standard issue red jail shirt, red jail trousers, jail flip-flops, and a waist chain with handcuffs, bolted from the officers while being taken from the courthouse back to the jail. Officers gave chase and quickly reapprehended Cienfuegos about three and one-half blocks from the courthouse. They found him lying under a bush, body partially secreted; head "sticking out." VRP-II at 122. He was charged with first degree escape, a class B felony.
Detective Arroyos, who helped take Cienfuegos back to the jail, testified at trial that "[h]e was sick the way he described to me how he was hurting, like drug withdrawal." VRP-II at 123. Cienfuegos himself testified he remembers nothing from the time he was in court, until he heard someone call his name, whereupon he fell into the aforementioned bushes. He denied culpability for running, pleading to the jury, "[I]t was the drugs that were in me at the time." VRP-II at 174.
Defense counsel presented expert testimony from Dr. Nora Fleming Young. Dr. Young maintained a general practice as a clinician, has a Ph.D. in psychology with a subfield in chemical dependency and deviant personalities, and is board certified in chemical dependencies and withdrawal. She testified without objection that Cienfuegos "was in severe withdrawal and wasn't reasonable, wasn't rational, probably didn't know what he was doing," VRP-II at 194-95, and that he suffered from a cognitive disorder. In part, she told the jury:
[I]n a psychotic break you are out of touch with reality. You feel, you react, but you don't plan. You don't have the ability.... I don't believe he would be capable of really knowing that he was escaping at that time. I don't think he would be capable of thinking about it in those terms.
VRP-II at 200-02. Asked directly if she believed Cienfuegos knew what he was doing when he ran, she testified: "In my professional opinion he did not." VRP-II at 198.
*1014 Argument focused almost exclusively on whether Cienfuegos knew he was escaping from custody. The jury was instructed that knowledge is an element of the crime of escape. Despite evidence of a cognitive disorder preventing Cienfuegos from forming knowledgethe requisite intentan instruction on diminished capacity was not requested. The jury found Cienfuegos guilty.
After his conviction Cienfuegos retained new counsel. This attorney brought a motion to vacate the conviction and a motion for a new trial, arguing in part that jurors in Skagit County did not fairly represent the ethnic makeup of the county, rendering the jury panel defective. Trial counsel testified in support of the motion that he did not remember seeing any minorities on the panel.
The juror lists are compiled from the lists of those who are registered to vote or who hold a drivers license or state identification card. GR 18. Counsel asked the court for the list of jurors who could have been called September 1998 so that he could contact them and determine their ethnicity. The county prosecutor objected on the grounds of juror privacy. The trial judge denied the motion, but did agree to look at the list himself to determine if there were any Hispanic names.
Dissatisfied with this response, Cienfuegos appealed his conviction on the grounds of ineffective assistance of counsel, insufficient evidence and unconstitutional jury venire compilation. The Court of Appeals affirmed his conviction in an unpublished decision. Cienfuegos sought review on all grounds, which this Court granted.

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL
Washington has adopted the Strickland test to determine whether a defendant had constitutionally sufficient representation. State v. Bowerman, 115 Wash.2d 794, 808, 802 P.2d 116 (1990). Strickland requires:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Cienfuegos bears the burden of showing that, but for the ineffective assistance, there is a reasonable probability that the outcome would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "Deficient performance is not shown by matters that go to trial strategy or tactics." State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996).
Cienfuegos argues he suffered from ineffective assistance of counsel because counsel did not ask for a diminished capacity instruction. The Washington Pattern Jury Instruction on diminished capacity states: "Evidence of mental illness or disorder may be taken into consideration in determining whether the defendant had the capacity to form ______ (fill in requisite mental state)." 11 Washington Pattern Jury Instructions: Criminal 18.20, at 224 (2d ed.1994).
Analytically, Cienfuegos presents three questions. First, we must determine whether Cienfuegos was entitled to a diminished capacity instruction. Second, we must decide whether it was ineffective assistance of counsel per se not to have requested the instruction. Finally, we must decide whether ineffective assistance of counsel prejudiced his defense under the Strickland standard.
First, we find Cienfuegos was entitled to the instruction if it had been offered. We have previously held it reversible error for a judge to refuse a diminished capacity instruction supported by the evidence. "Diminished capacity instructions are to be given whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged." State v. Griffin, 100 Wash.2d 417, 418-19, 670 P.2d 265 *1015 (1983). Cienfuegos submitted considerable evidence that he was incapable of forming the requisite intent due to cognitive impairment. The evidence was sufficient to support a diminished capacity instruction.
Second, we must determine whether the failure to request the instruction was ineffective assistance of counsel per se. Cienfuegos relies upon State v. Thomas, 109 Wash.2d 222, 743 P.2d 816 (1987) to support his argument. In Thomas, the defendant was charged with felony flight attempting to elude a police vehicle. Id. at 226, 743 P.2d 816. Felony flight requires intentional (willful or wanton) behavior. Id. at 227, 743 P.2d 816. Thomas had a history of drinking and blackouts, and testified she was drunk and incoherent on the night of the incident, and had no memory of eluding police or even of police cars following her car. Id. at 225, 743 P.2d 816. The defense theory of the case was that the defendant was too intoxicated to form the requisite intent; however, she did not request the diminished capacity instruction and the instructions given did not make the subjectivity of the required intent clear. Id. at 227-28, 743 P.2d 816.
This Court found the jury instructions defective because they allowed the jury to conclude mere intoxication satisfied the willful behavior element, without any further inquiry to the defendant's actual subjective intent to flee. Id. at 229, 743 P.2d 816. The failure of the attorney to propose the diminished capacity instruction under the facts presented was therefore deficient and deprived Thomas of a fair trial. The conviction was reversed and the case remanded for a new trial. Thomas, 109 Wash.2d at 232, 743 P.2d 816; accord State v. Warden, 133 Wash.2d 559, 564, 947 P.2d 708 (1997) ("Diminished capacity is a mental condition not amounting to insanity which prevents the defendant from possessing the requisite mental state necessary to commit the crime charged.... Refusal to give an instruction that prevents the defendant from presenting his theory that a killing was unintentional is reversible error.")
While Cienfuegos argues Thomas should be read as establishing a per se standard, the general rule remains that we look to the facts of the individual case to see if the Strickland test has been met. State v. Robinson, 138 Wash.2d 753, 767-68, 982 P.2d 590 (1999) (not per se ineffective assistance of counsel to prevent defendant from taking the stand); Hendrickson, 129 Wash.2d at 77, 917 P.2d 563 (presumption that counsel's representation was effective); State v. McFarland, 127 Wash.2d 322, 337, 899 P.2d 1251 (1995) ("The defendant also bears the burden of showing, based on the record developed in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation."); State v. Holm, 91 Wash.App. 429, 436, 957 P.2d 1278 (1998) (not per se ineffective assistance of counsel for defense attorney to fail to pursue plea bargaining).
The question of whether counsel's performance was ineffective is generally not amenable to per se rules, but requires a case by case basis analysis. We therefore hold the failure to request a diminished capacity instruction is not ineffective assistance of counsel per se.
Finally, we come to the question of whether Cienfuegos received ineffective assistance of counsel under the facts of this case. Cienfuegos fails to satisfy the second prong of the Strickland test: the existence of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 446 U.S. at 687, 100 S.Ct. 1945. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694, 100 S.Ct. 1945.
The jury was instructed on knowledge and intent. The instruction on knowledge read:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result which is described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

*1016 Acting knowingly or with knowledge is also established if a person acts intentionally.
Clerk's Papers 14 (Jury Instruction No. 7)
In closing both the prosecutor and defense counsel argued extensively about Cienfuegos's ability to have knowledge or form the requisite intent. From this instruction, the jury could have taken into account Cienfuegos's impairment. The diminished capacity instruction would have highlighted that fact and should have been given, but even without it defense counsel was able to argue his theory of the case. Cienfuegos has not met the Strickland requirement that his counsel's errors were so serious as to deprive him of a fair trial. Cienfuegos has failed to show that confidence in the jury's verdict has been undermined by the failure of his counsel to request the diminished capacity instruction. Therefore, Cienfuegos has not shown that he received ineffective assistance of counsel in this case.

ETHNIC REPRESENTATION OF JURY
In Skagit County, the master jury list is drawn from a compilation of registered voters, licensed drivers, and holders of state identification cards residing in the county. See GR 18(b);[1] RCW 2.36.055. Cienfuegos contends that it was error not to provide the names and addresses of the 700 people on the jury panel list and, alternatively, that GR 18 is unconstitutional because it does not identify jurors by race, which would allow defendants to quickly determine if the jury panel represents a fair cross section of the community.
In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the United States Supreme Court held that Louisiana's jury selection statutes denied defendants a constitutional Sixth Amendment right to a jury trial. Louisiana law excluded women from jury service unless they previously filed a written declaration of their desire to be subject to jury service. Women represented 53 percent of those eligible for jury service but only 10 percent of those on the jury list of the parish where Taylor was tried. The Court stated:
It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.
Taylor, 419 U.S. at 538, 95 S.Ct. 692 (citations omitted).
We applied Taylor in Hilliard, where we upheld former RCW 2.36.060, repealed by Laws of 1988, ch. 188, § 21, which provided that jurors were to be selected randomly from the voter registration lists. We observed, "[t]he defendant offered no evidence concerning the representation of racial minorities on King County voter registration lists. Thus, there is a total lack of proof that these lists do not constitute a fair cross section of the community and that their use is inherently unconstitutional." State v. Hilliard, 89 Wash.2d 430, 441, 573 P.2d 22 (1977).
Cienfuegos does not argue that Washington's venire method results in systematic exclusion. He contends instead that because population estimates by the Washington State Office of Financial Management indicate that 12.38 percent of Skagit County residents are African American, American Indian, Eskimo, Aleut, Alaskan, Pacific Islander and Hispanic, jury venires should reflect this same statistical balance. In essence he argues that since the state cannot prove they do reflect the same statistical balance, the system is unconstitutional.
The burden of proof is on the challenger to show the master jury list is *1017 not representative, excluding an identifiable population group. Hilliard, 89 Wash.2d at 440, 573 P.2d 22. Under the federal constitution (here no state constitutional argument was raised), the petitioner must show "(1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Cienfuegos has made no attempt at showing the second or third factors, and therefore this challenge fails under Hilliard and Duren.
Cienfuegos argues he was prevented from making that showing by either the trial court's refusal to give him the list (so that he could interview the potential jurors), or by the compilation method itself (because it does not collect information about potential jurors' race). However, nowhere in our jurisprudence is it suggested a bare allegation that the jury list is not representative is sufficient to bring this issue into play. Washington's method of creating a jury list is broader and more inclusive than required by law. See, e.g., Hilliard, 89 Wash.2d at 440-41, 573 P.2d 22 (collecting cases establishing drawing jury list from registered voters is sufficient). While there is no need to prove intent to discriminate under the Sixth Amendment, some showing of actual disproportionality is required. See generally Taylor, 419 U.S. at 528-29, 95 S.Ct. 692 (requiring only an objective showing that jury lists are nonrepresentative; no showing of intent to discriminate required under Sixth Amendment). Cienfuegos has not established his prima facie case.
We are mindful of the importance of a constitutionally representative jury pool. If Washington's scheme is failing to provide such a representative pool, it properly should be challenged; but Cienfuegos has not made the requisite showing.

CONCLUSION
Cienfuegos has not demonstrated he was prejudiced by counsel's failure to request a diminished capacity instruction. Having considered the other grounds raised by petitioner and finding them without merit, we affirm.
SMITH, IRELAND, BRIDGE and OWENS, JJ., concur.
ALEXANDER, C.J., dissents and files an opinion.
ALEXANDER, C.J. (dissenting).
I disagree with the majority insofar as it concludes that the failure of Guillermo Cienfuegos's counsel to request a diminished capacity instruction was not, under the circumstances of this case, ineffective assistance of counsel. I, therefore, dissent from its decision to affirm Cienfuegos's conviction on a charge of first degree escape.
Although the majority concedes that Cienfuegos established that he was entitled to an instruction on his defense of diminished capacity, it holds that he failed to show the existence of a reasonable probability that, but for his counsel's error in failing to request the instruction, the result of the proceeding would be different. In my view, it was not incumbent on Cienfuegos to establish that the result would probably have been different if the jury instruction to which he was entitled had been given. I say this because, as the majority notes, we have held in State v. Thomas, 109 Wash.2d 222, 743 P.2d 816 (1987), that failure of defense counsel to propose a diminished capacity instruction, where the facts support the giving of such an instruction, deprives the defendant of a fair trial and the case must be retried. In other words, the defective conduct of the attorney is ineffective assistance per se. See also State v. Warden, 133 Wash.2d 559, 564, 947 P.2d 708 (1997) ("Diminished capacity is a mental condition not amounting to insanity which prevents the defendant from possessing the requisite mental state necessary to commit the crime charged.... Refusal to give an instruction that prevents the defendant from presenting his theory that a killing was unintentional is reversible error.").
*1018 Even assuming, though, that the failure of Cienfuegos's counsel to request the diminished capacity instruction was not ineffective assistance per se, it is apparent that defense counsel's failure prejudiced Cienfuegos's defense. Thus, counsel provided ineffective assistance under the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that regard, it is my view that Cienfuegos easily meets his burden of showing that but for the ineffective assistance of his counsel, the outcome of the trial probably would have been different.
Jury instructions relating to a defense should be given whenever there is evidence supporting the defense theory. Here, as the majority concedes, there was evidence in the form of a defense expert who testified that because of withdrawal effects Cienfuegos did not have knowledge that he was running away from jail personnel. This was a classic diminished capacity defense and it was really Cienfuegos's whole case. The jury should, therefore, have been instructed that evidence of a mental disorder may be considered by it in determining whether Cienfuegos had the mental capacity to form the intent to commit the crime of first degree escape,[1] i.e., that he knew that his actions would result in leaving confinement without permission. State v. Descoteaux, 94 Wash.2d 31, 35, 614 P.2d 179 (1980), overruled on other grounds by State v. Danforth, 97 Wash.2d 255, 257, 643 P.2d 882 (1982). While one can never be certain that the outcome of a trial would have been different if a proper instruction had been given, as it should have been here, I can safely say that Cienfuegos's failure to receive the instruction completely eliminated any chance he had of establishing the defense.
The majority suggests that the defense of diminished capacity could be argued from the jury instructions that were given and refers us to the standard jury instruction relating to knowledge and intent.[2] This instruction is not sufficient because it provides little help to the jury in dealing with the evidence Cienfuegos presented regarding diminished capacity. In that regard, we have said in State v. Griffin, 100 Wash.2d 417, 420, 670 P.2d 265 (1983), that "[g]eneralized instructions on criminal intent are not sufficient to apprise a jury of mental disorders which may diminish a defendant's capacity to commit a crime."
The majority also makes the point that the prosecutor and defense counsel "argued extensively about Cienfuegos's ability to have knowledge or form the requisite intent" and that from this, the jury could have taken into account Cienfuegos's impairment. Majority at 11. This suggestion that argument by counsel may be considered as an additional instruction on the law is meritless. Indeed, the trial court properly instructed the jury to "[d]isregard any remark, statement or argument that is not supported by the evidence or the law as stated by the court." Clerk's Papers at 7 (Jury Instruction No. 1).
In sum, by failing to request the jury instruction that Cienfuegos was entitled to receive, defense counsel essentially subtracted from the evidence the testimony of Cienfuegos's expert regarding diminished capacity. Because Cienfuegos's entire defense hinged on this testimony, the error was significant and prejudicial. I would reverse Cienfuegos's conviction and remand for a new trial.
JOHNSON, MADSEN and SANDERS, JJ., concur.
NOTES
[1] "`Jury source list' means the list of all registered voters of a county, merged with a list of licensed drivers and identicard holders who reside in that county. The list shall specify each person's first and last name, middle initial, date of birth, gender and residence address." GR 18(b).
[1] "Evidence of mental illness or disorder may be taken into consideration in determining whether the defendant had the capacity to form (fill in requisite mental state)." 11 Washington Pattern Jury Instructions: Criminal 18.20, at 224 (2d ed.1994).
[2] The trial court instructed the jury that:

"A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result which is described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
"If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
"Acting knowingly or with knowledge also is established if a person acts intentionally." Clerk's Papers at 14 (Jury Instruction No. 7).