# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50965-2-II |
| Respondent, | |
| v. | |
| LARRY EUGENE DEE, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Larry Eugene Dee appeals his convictions for two counts of second degree identity theft with a special verdict finding that there was a particularly vulnerable victim. Dee argues that he received ineffective assistance from his trial counsel who failed to object to the lay witness opinion testimony identifying Dee in surveillance footage.

Because Dee cannot show prejudice, we hold that he did not receive ineffective assistance of counsel. Accordingly, we affirm Dee's convictions.

## FACTS

John Ross had multiple sclerosis and required in-home caregivers to perform most daily tasks for him. His caregivers, Christina Diefel and Christina Salt, provided services to Ross through their employment at Visiting Angels Caregiving. Dee was Salt's boyfriend. Salt

provided services in the morning and Diefel provided services in the evening. When Ross

needed his medication picked up or wanted cash, his on-duty caregiver would go to Walgreens

with his debit card. The caregivers knew the PIN (personal identification number) for the card to

make purchases and cash withdrawals.[1] Salt and Diefel's shifts did not overlap and the two had

never met.

After one occasion when Diefel picked up medication for Ross using the debit card, she

placed the card on a table in Ross's home. The following morning, Salt asked Ross for

permission to have Dee bring coffee to her. Ross did not see Dee, but heard Salt thank someone

for the coffee. Ross had met Dee on a prior occasion when Dee helped move some boxes at

Ross's house and watched Dee walk while he assisted Ross. Ross's mother had seen Dee bring

coffee once before.

A few days later, Ross again asked Diefel to pick up medication, but the two could not

locate the debit card. Upon reviewing his account, Ross discovered that someone had withdrawn

$1,001 from a cash machine at a Winco Store on two separate occasions. Ross and Diefel

alerted law enforcement about the missing $2,002.

Following the incident, Salt quit her position at Visiting Angels Caregiving. Salt then

sent Dee to return a work phone to Emiley Stevens, the office manager at Visiting Angels

Caregiving. Stevens knew of the theft and investigation, so she looked at pictures of Dee on

---

[1] This PIN was known by, at most, six people: Ross, Diefel, Salt, Ross's mother, Ross's niece, and Ross's sister.

Facebook to recognize him when he arrived. Dee and Stevens met for approximately 15 minutes. Stevens chatted with Dee about his tattoos and observed him wearing a Chicago Bulls hat. One of Dee's tattoos is of Chicago, his place of birth. This meeting was the only time Stevens and Dee interacted in person.

Officer Kenny Davis obtained surveillance footage from Winco. From the video, it appeared that the same individual withdrew funds from the cash machine both times. The person wore dark clothing and a Chicago Bulls hat. Dee's facial features are visible in the surveillance footage. Officer Davis interviewed Ross, Ross's mother, and Stevens. Although neither Ross nor his mother identified Dee as the person in the footage, Ross thought the person walked in a similar manner to Dee. Ross's mother recognized the gold Buick driven by the person in footage as similar to Salt's gold Buick. Officer Davis retrieved Dee's photograph from a law enforcement database and identified Dee as the person making the withdrawals. Stevens was shown the video and identified Dee with "100 percent" certainty as the person making the withdrawals. Verbatim Report of Proceedings (VRP) (Sept. 11, 2017) at 103. Law enforcement officers saw Dee driving the gold Buick and arrested him. Law enforcement officers called Salt and she picked up the gold Buick and Dee's wallet.

Dee was charged with two counts of second degree identity theft with a special allegation that the crime was against a particularly vulnerable victim. At trial, witnesses testified to the above facts. During her testimony, Stevens again identified Dee as the person making the withdrawals in the surveillance footage. Dee's counsel did not object to this testimony. Officer Davis, while describing the surveillance footage to the jury, also identified Dee as the person

3

making the withdrawals.  Dee's counsel did not object to this testimony.  The jury was shown the video and stills of the surveillance footage on a projector.  Officer Davis stated that the video itself was clearer and a higher resolution when viewed on a computer.

During closing argument, the State said, "So you have two people that have viewed this video and told you they believe this is Larry Dee in the video, but you also have—each of you have your own eyes, and can view it yourself."  VRP (Sept. 12, 2017) at 190.  The jury was provided a laptop computer to view the surveillance footage in the jury room during deliberations.  The jury was also provided exhibits containing Dee's photograph.  The jury found Dee guilty of two counts of second degree identity theft with a special verdict finding that there was a particularly vulnerable victim.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Dee contends he received ineffective assistance from his trial counsel when counsel failed to object to Stevens's and Officer Davis's testimonies identifying Dee in the surveillance footage.  We disagree.

A.    *Ineffective Assistance of Counsel Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel.  *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).  We review ineffective assistance claims de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To prove that he received ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient

4

and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Because both prongs must be met, a failure to show either prong will end our inquiry. *State v. Classen*, 4 Wn. App.2d 520, 535, 422 P.3d 489 (2018).

To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). Counsel is not deficient for failing to make requests that would be unsuccessful. *State v. Denny*, 173 Wn. App. 805, 811, 294 P.3d 862 (2013). To establish prejudice, the defendant must show a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Estes*, 188 Wn.2d at 458.

To show counsel was ineffective for failing to object, a defendant must show that an objection would have been sustained. *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 748, 101 P.3d 1 (2004). Where the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence, the defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the failure to object, (2) that an objection likely would have been sustained, and (3) that the trial's result would have differed had the evidence not been admitted. *State v. McFarland*, 127 Wn.2d 322, 336-37, 899 P.2d 1251 (1995); *State v. Hendrickson*, 129 Wn.2d 61, 80, 917 P.2d 563 (1996).

There is no ineffective assistance when counsel's complained of actions are trial tactics or go to the theory of the case. *Grier*, 171 Wn.2d at 33. We strongly presume that defense counsel's conduct was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). Because of this presumption, the "'defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Emery*, 174 Wn.2d at 755 (quoting *McFarland*, 127 Wn.2d at 336).

B.      *Evidentiary Principles*

A lay witness with personal knowledge may give opinion testimony if the testimony is (1) rationally based on the witness's perception and (2) helpful to a clear understanding of the testimony or the fact in issue. ER 602, 701; *see State v. Hardy*, 76 Wn. App. 188, 190, 884 P.2d 8 (1994), *aff'd sub nom*. *State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996). Although a witness may not provide opinion testimony on a defendant's guilt, testimony is not objectionable simply because it relates to the ultimate issue in the case. *State v. George*, 150 Wn. App. 110, 117, 206 P.3d 697 (2009); ER 704.

Lay witness opinion testimony identifying an individual in surveillance footage risks invading the province of the jury and unfairly prejudicing a defendant. *George*, 150 Wn. App.at 118; *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993). A lay witness may give opinion testimony as to the identity of a person in a surveillance photograph only if some basis exists for concluding that the witness is more likely than the jury to correctly identify the defendant from the photograph. *Hardy*, 76 Wn. App. at 190. Lay witness testimony identifying a person in surveillance video or photographs is allowed either when the witness has had

"sufficient contacts" with the person or when the person's appearance before the jury differs from the person's appearance in the photographs. *George*, 150 Wn. App. at 118.[2]

In *Hardy*, a police officer identified the two defendants in a "somewhat grainy videotape." *Hardy*, 76 Wn. App. at 191. The officer testified that he had known one defendant for "several years" and the other "for 6 or 7 years and considered him a friend." *Hardy*, 76 Wn. App. at 191-92. In upholding the admission of the identification testimony the court considered the officer's longstanding relationship with the defendants. *Hardy*, 76 Wn. App. at 191.

In *George*, a detective identified two defendants in a "very poor quality video." *George*, 150 Wn. App. at 119. The detective testified that he talked with the defendants only on the night of the robbery. He observed one defendant exiting and running from a van and again later at the hospital. He also observed the other defendant getting out of a van and being handcuffed and then later in an interview room at the police station. *George*, 150 Wn. App. at 119. The court concluded that the trial court abused its discretion in admitting the testimony because the detective's contacts fell "far short of the extensive contacts in *Hardy*." *George*, 150 Wn. App. at 119. *But see George*, 150 Wn. App. at 121 (Penoyar, J., dissenting in part) (arguing that the

---

[2] The State argues that Stevens and Officer Davis provided their "perception[]" and not their "opinion" and cites *State v. Blake* to contend that their testimony is admissible. Br. of Resp't at 8; *State v. Blake*, 172 Wn. App. 515, 525-26, 298 P.3d 769 (2012). But *Blake* dealt with direct in-person witness perceptions of a shooting, not subsequent identification on surveillance video. *Blake*, 172 Wn. App. at 521. Here, neither Stevens nor Officer Davis had direct in-person perceptions of the withdrawals at Winco. Accordingly, *Blake* is inapplicable to our facts. Instead, we apply the principles from *George* and *Hardy* regarding identification through surveillance footage.

officer's opportunity to observe the one defendant in the interview room gave him "independent familiarity" to support the testimony).

C. *Deficient Performance*

    1. *Contacts between Dee and Officer Davis Insufficient*

As discussed above, Officer Davis's opinion testimony as to Dee's identity is admissible only if some basis exists for concluding that Officer Davis is more likely than the jury to correctly identify Dee from the video. *Hardy*, 76 Wn. App. at 190-91. Nothing in the record on appeal shows that such basis existed. Officer Davis never had in-person contact with Dee before the trial. Officer Davis acquired the video footage from Winco, gathered information about possible suspects, located Dee's photograph through law enforcement databases, spoke with Ross, Ross's mother, and Stevens, and then determined the individual withdrawing the cash in the video was Dee. Officer Davis did not have any contact with Dee during the investigation. Officer Davis testified to the surveillance footage and identified Dee based on viewing Dee's photograph and studying the footage.

Officer Davis said the resolution of the video on a computer screen was higher and clearer than on the projector shown in the courtroom. And, the jury was given the surveillance video and a laptop with the software to view the security footage at a higher resolution during deliberations. This provided the jury with the same footage to identify Dee that Officer Davis had during his investigation. The jury also had the same photographs of Dee and observed Dee in the courtroom the same as Officer Davis. Accordingly, no basis existed to conclude that

Officer Davis was more likely than the jury to correctly identify Dee. If counsel would have objected to Officer Davis's identification testimony, the objection would have been sustained.

2. *Contacts between Dee and Emiley Stevens Also Insufficient*

Likewise, Stevens's opinion testimony is admissible only if Stevens was more likely than the jury to identify Dee in the video. *Hardy*, 76 Wn. App. at 190-91. Stevens's contact with Dee does not provide a tenable basis for concluding that Stevens was more likely than the jury to correctly identify Dee from the video footage. Stevens met Dee only once for 15 minutes. Prior to the meeting, Stevens looked at Dee's Facebook photographs. She observed Dee's tattoos and clothing, later identifying that Dee wore the same hat to their meeting and to Winco. She testified that she observed so carefully because she wanted to be able to identify Dee in the future.

Similar to the contacts in *George*, Stevens's contacts fell "far short of the extensive contacts" required before allowing lay witness opinion testimony identifying a defendant. *George*, 150 Wn. App. at 119. Stevens's brief interaction did not establish that she was familiar enough with Dee to provide additional information that would make her more likely than the jury to be able to identify Dee in the clear surveillance footage. Accordingly, Stevens did not have sufficient contacts with Dee nor information that would make it more likely that she would be able to identify Dee than the jury. Had counsel objected to Stevens's identification testimony, the objection would have been sustained.

3.      *Admission of the Identification Testimony*

A reasonable attorney in the circumstances would have objected to this improper identification testimony by Officer Davis and Stevens, and a trial judge would not have allowed such testimony into evidence. These witnesses's statements invaded the province of the jury as the fact finder. As a result, Stevens's and Officer Davis's lay opinions identifying Dee in the surveillance footage would have been excluded had Dee's attorney objected.

D.      *Prejudice*

But even assuming that counsel's failure to object was not tactical, Dee must also show that, but for his counsel's deficient performance, there is a reasonable probability of a different outcome of his trial. Dee cannot make such a showing.

Here, strong circumstantial evidence established Dee's guilt. Dee was in a position to take the debit card when he dropped off coffee. Dee was in a relationship with Salt, one of the few individuals who knew the PIN number for the card. Ross believed the person in the footage walked similarly to Dee. A gold Buick was observed in the surveillance footage. Dee was subsequently recognized and arrested while driving Salt's gold Buick. After being arrested, Dee called Salt, who picked up the gold Buick and Dee's wallet. Dee wore a Chicago Bulls hat when meeting Stevens. A Chicago Bulls hat is worn by the person in the footage. This circumstantial evidence, without considering Stevens's or Officer Davis's identifications, would lead a jury to find Dee guilty beyond a reasonable doubt. Further, in closing arguments, the State encouraged the jury to draw its own conclusions from the video, stating, "So you have two people that have viewed this video and told you they believe this is Larry Dee in the video, but you also have—

10

No. 50965-2-II

each of you have your own eyes, and can view it yourself."[3]  VRP (Sept. 12, 2017) at 190.  The jury was able to compare their perception of Dee with the person in the video to determine whether it was him.  And, Dee's facial features are visible in the surveillance footage.

The evidence beyond Stevens's and Officer Davis's identifications is strong.  As such, there is not a reasonable probability that the outcome would have been different if the identifications by Stevens and Officer Davis had been excluded.  Because Dee cannot show prejudice, we hold that his ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, A.C.J.

_____
Sutton, J.

---

[3] Dee mentions that his trial counsel should have objected when the State argued from the identification evidence during closing arguments.  However, this argument is dependent upon his counsel making prior objections when the witnesses were identifying Dee during their testimony.  Because such objections were not made, we do not consider this argument.

11