# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>LOGAN HUGH HUMPHREY,<br><br>          Petitioner. | No. 58627-4-II<br><br>UNPUBLISHED OPINION |

  CHE, J. — Logan Hugh Humphrey seeks relief from personal restraint imposed following his conviction for second degree rape.

  Humphrey forced G.P.T. off a running trail at knifepoint and sexually assaulted her. Humphrey went to trial on charges including first degree rape, second degree rape in the alternative, and second degree assault with sexual motivation. Humphrey argued that G.P.T. consented to the intercourse. A jury convicted Humphrey of second degree rape and second degree assault with a sexual motivation.[1]

  Humphrey timely filed this personal restraint petition (PRP). He argues that he received ineffective assistance of counsel because his counsel did not propose an inferior degree instruction for third degree rape.

  We deny Humphrey's petition.

---

[1] This court reversed the second degree assault conviction on double jeopardy grounds in Humphrey's direct appeal. *State v. Humphrey*, No. 54114-9-II, slip op. at 2 (Wash. Ct. App. Apr. 12, 2022) https://www.courts.wa.gov/opinions/pdf/D2%2054114-9-II%20Unpublished%20 Opinion.pdf.

FACTS

After Humphrey led G.P.T. into the woods at knifepoint and sexually assaulted her, the State charged Humphrey with first degree rape, second degree rape in the alternative, first degree kidnapping, and second degree assault with sexual motivation. *State v. Humphrey*, No. 54114-9-II, slip op. at 2 (Wash. Ct. App. Apr. 12, 2022) https://www.courts.wa.gov/opinions/pdf/D2%2054114-9-II %20Unpublished%20Opinion.pdf.

At trial, G.P.T. testified that she was on a run when Humphrey came up behind her with a knife, grabbed her and covered her eyes, and pulled her off the trail into some bushes. G.P.T. had never seen Humphrey before, he was much taller than G.P.T., and she thought he was going to kill her. She dropped her phone in hopes that it could be used to find her body. Humphrey forced G.P.T. to perform oral intercourse on him and engage in vaginal intercourse, and he digitally penetrated her rectum. G.P.T. covered her eyes and tried to avoid looking at Humphrey during the intercourse because she believed that doing so might keep him from killing her. She also told him that she had three children in hopes that he might let her live. Humphrey told G.P.T. to count to 20 before she uncovered her eyes and warned her not to call police before he left her alone in the woods. G.P.T. then walked to a nearby store to call her husband, who contacted police when he arrived at the store.

G.P.T.'s husband testified that G.P.T. was "very anxious" and crying when she called him to pick her up. 3 Rep. of Proc (RP) at 697. A police officer who interviewed G.P.T. at the hospital where she underwent a sexual assault examination testified that she was "upset, crying, shaking," and had difficulty answering questions. RP at 787. A sexual assault nurse collected

swabs from G.P.T.'s vagina and rectum that had male DNA on them. The DNA matched Humphrey's with an error rate of one in 500 million.

Humphrey testified that he met G.P.T. on a run several weeks before the charged incident, and that they flirted before parting ways. On day of the incident, he saw her on a walk and joined her. While walking, they engaged in consensual kissing and sexual touching, then found a spot off of the trail in the woods where they had oral and vaginal intercourse. During the vaginal intercourse, Humphrey pressed down onto her shoulder area.

Humphrey said that G.P.T. was worried about her husband finding out about the affair, which gave him "the impression that she was worried about protection," so he wore a condom. 5 RP at 1082. During intercourse, he told G.P.T. that the condom broke, but continued to have intercourse with her. Humphrey noticed G.P.T. started shaking, covered her eyes, and said that she wanted to go home to her children, so he stopped. While G.P.T. did not specifically say yes to the encounter, she did not tell Humphrey no or stop, nor did she vocalize a withdrawal of consent. After the intercourse, G.P.T. told Humphrey to go, so he left her in the woods. Humphrey thought that G.P.T. consented to the intercourse through her actions.

Humphrey believed that things changed when the condom broke but it took him a moment to understand how dramatically things had changed. Humphrey agreed that he failed to tell police in his initial interview that he had met G.P.T. before, that they flirted the entire time, or that they discussed her husband. Humphrey had told police that he "felt sick" when G.P.T. was trembling because he knew it wasn't consensual at that point. 5 RP at 1114. At trial, Humphrey clarified that he continued with the intercourse for a little bit before he fully realized the situation had changed but agreed that he did not clarify that during his police interview.

The jury instructions provided, "Evidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have sexual intercourse or sexual contact." Clerk's Papers (CP) at 30. In closing argument, defense counsel argued that G.P.T. agreed to the intercourse but claimed that she was raped to protect her relationship with her husband, and that her husband was the driving force behind calling police and prosecuting the case while G.P.T. "want[ed] this to go away." 6 RP at 1296.

The jury acquitted Humphrey of first degree rape and first degree kidnapping. The jury convicted Humphrey of second degree rape and second degree assault, and found that he committed the assault with sexual motivation. Humphrey had a prior conviction for first degree rape, and he pleaded guilty to first degree assault in a case that had been severed from the current case and was sentenced the same day as the current case. Because first and second degree rape and first degree assault were "most serious offenses," the trial court sentenced Humphrey as a persistent offender and imposed a sentence of life without the possibility of release. CP at 49; former RCW 9.94A.030(33)(a), (b) (2016), RCW 9A.44.040(2), former RCW 9A.44.050(2) (2007).

Humphrey appealed his second degree rape and second degree assault with sexual motivation convictions. *Humphrey*, No. 54114-9-II, slip op. at 1. This court remanded for the trial court to vacate the second degree assault with sexual motivation conviction on double jeopardy grounds but otherwise affirmed. *Id*. at 1-2. Humphrey timely filed this personal restraint petition.

4

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

Humphrey argues that his incarceration constitutes unlawful restraint because he received ineffective assistance of counsel at trial. He asserts that counsel performed deficiently by arguing a defense of consent and by failing to propose an inferior degree instruction for third degree rape. Because there was evidence at trial that Humphrey knew the intercourse was or became non-consensual, he now asserts that the consent "defense [was] unworkable." PRP at 9. Thus, he contends that he was entitled to an inferior degree offense instruction and that counsel performed deficiently by failing to propose one. We disagree.

A.      Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 to the Washington Constitution both guarantee criminal defendants the right to effective assistance of counsel. U.S. CONST. amend VI; WASH. CONST. art. I, § 22. "We apply the same prejudice standard to ineffective assistance claims brought in a personal restraint petition as we do on appeal." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). Thus, Humphrey must prove both that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances and that in the absence of counsel's deficiencies, there is a reasonable probability that the result of the proceeding would have been different." *Id*. The failure to show either prong will end this court's inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

When a claim of ineffective assistance of counsel is predicated on the failure to propose a jury instruction, the defendant must also show that they would have been "entitled to the

instruction if it had been offered." *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001).

"[A] defendant can be found guilty of a crime that is an inferior degree of the crime charged" without being separately charged. *State v. Fernandez-Medina*, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000); *see* RCW 10.61.003. A party requesting an inferior degree instruction must show that the State charged the defendant with a crime that was "divided into degrees, and the proposed offense is an inferior degree of the charged offense;" that "the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense;'" and that "there is evidence that the defendant committed only the inferior offense." *State v. Coryell*, 197 Wn. 2d 397, 410, 483 P.3d 98 (2021) (*quoting State v. Peterson*, 133 Wn.2d 885, 892-93, 948 P.2d. 381 (1997)).

An inferior degree offense, as opposed to a lesser included offense under RCW 10.61.006, may have an element that is not an element of the greater offense. *Coryell*, 197 Wn.2d at 411. "When a crime has been proven against a person, and there exists a reasonable doubt as to which of two or more degrees" they are guilty of, they "shall be convicted only of the lowest degree." RCW 9A.04.100(2); *Coryell*, 197 Wn.2d at 412.

A defendant is entitled to a lesser included offense instruction when they satisfy the two-prong test articulated in *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). *Coryell*, 197 Wn.2d at 400. The defendant must fulfill the legal prong that "each of the elements of the lesser offense [is] a necessary element of the offense charged" and the factual prong that evidence in the case supports an inference that the defendant committed only the lesser offense. *Fernandez-Medina*, 141 Wn.2d at 453; *Coryell*, 197 Wn.2d at 400.

The test for determining if a party is entitled to an instruction for an inferior degree offense differs from the entitlement to an instruction on a lesser included offense only with respect to the legal component of the test. *Fernandez-Medina*, 141 Wn.2d at 454-55; *Coryell*, 197 Wn.2d at 400. This means that the factual component of the test for giving an inferior degree instruction and for giving a lesser included instruction is the same: whether there is evidence that the defendant committed only the inferior degree or lesser included offense.

Under the factual prong, the proper inquiry is not whether the evidence excludes the greater charged crime, but instead "whether the evidence raises an inference that the lesser degree or lesser included offense was committed such that a jury might have a reasonable doubt as to which degree of" offense or lesser included offense "was committed, believe that some level of [offense] was committed, and find the defendant guilty of the lesser offense." *Coryell*, 197 Wn.2d at 417-18.

We strongly presume that defense counsel performed effectively. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To be deficient, counsel's performance must fall "below an objective standard of reasonableness" based on all the circumstances. *Id.* at 247. "Deficient performance is not shown by matters that go to trial strategy or tactics." *State v. Hendrickson,* 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). "Generally, where an inferior degree offense instruction would weaken the defendant's claim of innocence, the failure to request an inferior degree offense instruction is a reasonable strategy." *Classen*, 4 Wn. App. 2d at 541.

B.    Humphrey's Counsel Did Not Provide Ineffective Assistance

Humphrey was charged with crimes including second degree rape and second degree assault with sexual motivation. A defendant commits second degree rape when they have

intercourse with another person "[b]y forcible compulsion." Former RCW 9A.44.050(1) (2007). "Forcible compulsion" is "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to [themselves] or another person, or in fear that [they] or another person will be kidnapped." Former RCW 9A.44.010(6) (2007).

A defendant commits third degree rape when, under circumstances not constituting rape in the first or second degree, such person engages in sexual intercourse with another person when either "the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct" or where "there is a threat of substantial unlawful harm to property rights of the victim." Former RCW 9A.44.060(1)(a)-(b) (2013). Consent means "that at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." Former RCW 9A.44.010(7).

Overall, consent negates the non-consent element of third degree rape, the forcible compulsion element of second degree rape, and may be an affirmative defense to assault. *State v. W.R., Jr.*, 181 Wn.2d 757, 765, 336 P.3d 1134 (2014); *State v. Shelley*, 85 Wn. App. 24, 28-29, 929 P.2d 489 (1997).

Here, even assuming that Humphrey may have been entitled to an inferior degree instruction for third degree rape, counsel's performance was not deficient. Defense counsel argued consent as a defense to all of the charges against Humphrey. The consent strategy was supported by Humphrey's testimony that when he fully realized that G.P.T. no longer consented to the sexual encounter, he stopped.

8

Humphrey now describes the consent defense as "unworkable" because the intercourse "became non-consensual." PRP at 9. But second degree rape requires the intercourse to occur "[b]y forcible compulsion," so the jury found that Humphrey did more than merely have intercourse without consent when it convicted him of second degree rape. Former RCW 9A.44.050(1). Conceding lack of consent for an inferior degree third degree rape jury instruction would not guarantee the jury would have found Humphrey guilty of third degree rape. Indeed, under these facts, the jury found that Humphrey's actions were by forcible compulsion beyond a reasonable doubt as required under second degree rape.

Moreover, arguing to the jury that Humphrey committed third degree rape would establish an element for second degree assault with sexual motivation, which required Humphrey to assault G.P.T. with intent to commit a felony, in this instance, third degree rape. Thus, arguing for third degree rape would have been unworkable for defense counsel as it would also have diminished their ability to avoid a second degree assault with sexual motivation conviction.

Lastly, given Humphrey's criminal history and guilty plea to first degree assault in an unrelated incident, if Humphrey was convicted of first, second, *or* third degree rape; second degree assault; or first degree kidnapping, he would have still been sentenced as a persistent offender. *See* former RCW 9.94A.030(33)(a), (b), (n). Requesting a jury instruction for the inferior degree crime of third degree rape and then arguing that Humphrey likely committed only third degree rape would have guaranteed a conviction for a second strike offense while counsel was negotiating a guilty plea for a third strike on an unrelated incident.

Clearly, proceeding on the consent defense for all charges went to trial strategy or tactics and requesting a third degree rape instruction would have weakened Humphrey's position in

9

terms of increasing his risk of being sentenced as a persistent offender. Deciding not to request an inferior degree offense instruction for third degree rape when that instruction would weaken the defendant's claim of innocence is reasonable trial strategy. *Classen*, 4 Wn. App. 2d at 541. Defense counsel's performance did not fall below an objective standard of reasonableness in light of all the circumstances.

Humphrey's ineffective assistance of counsel claim fails.

## CONCLUSION

We deny Humphrey's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Maxa, P.J.

_____
Lee, J.

10